UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHEVRON TCI, INC., | : | **CIVIL ACTION NO. 3:18-cv-00776-BAJ-** |
| Plaintiff, | : | **RLB** |
| | : | |
| | : | JUDGE BRIAN A. JACKSON |
| VERSUS | : | |
| | : | |
| CAPITOL HOUSE HOTEL MANAGER, | : | MAG. JUDGE RICHARD L. BOURGEOIS, JR. |
| LLC, and THE WILBUR MARVIN | : | |
| FOUNDATION, | : | |
| Defendants. | | |

## ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

NOW INTO COURT, through undersigned counsel, come defendants, Capitol House Hotel Manager, LLC ("**Manager**") and The Wilbur Marvin Foundation ("**WMF**") (collectively, "**Defendants**"), who, in answer to the Complaint ("**Complaint**") filed by plaintiff, Chevron TCI, Inc. ("**CTCI**" or "**Plaintiff**"), respectfully aver:

## AFFIRMATIVE DEFENSES BY MANAGER

### First Affirmative Defense

CTCI's Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Manager was a one-tenth of one percent member of Capitol House Hotel Operating Company, LLC ("**Operator**"). Plaintiff, CTCI, was the other member of Operator, with a 99.9% interest therein. CTCI, in its Complaint, inaccurately confuses and conflates the obligations of Operator with those of Manager.

### Third Affirmative Defense

Upon information and belief, the "TCI" in CTCI stands for "Tax Credit Investments" and CTCI was an entity utilized by Chevron for the very purpose of investing Chevron funds to

1

1626132.1

obtain the benefits of historic tax credit investments. In line with its purpose, CTCI invested in Operator to obtain a dollar for dollar Federal Income tax credit for revenue generated by affiliates of CTCI. CTCI made numerous similar investments. CTCI was audited by the IRS which contested the applicability of the credits. CTCI voluntarily settled the audit against the recommendation of Manager, receiving 2/3 of the original intended historic tax credit. CTCI is thus barred by the doctrine of unclean hands from seeking any additional benefit which could have resulted had CTCI not unilaterally decided to settle the IRS audit. Also, CTCI got the benefit it sought in its investment in Operator. CTCI is thus estopped from seeking additional benefit and sums herein as any additional benefit would be an unjust enrichment.

### Fourth Affirmative Defense

Operator was terminated and dissolved as an entity on September 5, 2012, when the lessor of the Hotel, Capitol House Hotel Development Company, LLC (**"Owner"**), and Operator terminated the lease between Owner and Operator, and Owner sold the Hotel (bricks and mortar) to a third party. Operator also sold all movable fixtures, trade receivables and other movable assets to the same third party. Section 2.5(A)(i) of the Operating Agreement of Operator provides:

> A. The Company shall continue in full force and effect until December 31, 2055, except that the Company shall be dissolved prior to such date upon the happening of any of the following events:
>
> > i. the termination or expiration of the Lease or the sale or other disposition of all or substantially all of the assets of the Company (including, without limitation, the Leasehold Interest) . . .

Thus, on September 5, 2012, "all or substantially all of the assets" of Operator were sold. Thus, Operator, by the terms of its own Operating Agreement, was dissolved on that date. La. R.S. 12:1334(1) provides that an act of termination or dissolution approved under Louisiana law includes an "occurrence of events specified in writing in the ... Operating Agreement."

1626132.1

### Fifth Affirmative Defense

CTCI contemporaneously consented to the sale of the Hotel by Owner, the termination of the leasehold interest between Operator and Owner, and to the sale of all of the assets of Operator, such as furniture, fixtures, trade receivables, etc. Specifically, Alan E. Levine of CTCI agreed to the termination of the lease and the sale of all of the assets of Operator in a Resolution executed on or about September 5, 2012 and the Lease Termination Agreement. In March of 2018, CTCI again agreed with Manager and the IRS that Operator terminated in 2012, when it agreed to an amended tax return (Form 872-PT) for Operator for the year 2012 showing termination and dissolution in 2012. Thus, CTCI has waived any rights and/or is estopped from asserting any claims inconsistent with its consent. CTCI has agreed Operator was dissolved on September 5, 2012.

### Sixth Affirmative Defense

CTCI herein asserts claims pursuant to a Purchase Agreement, dated December 29, 2005, between Manager (the "**Purchaser**") and CTCI (the "**Investor Member**"). More specifically, CTCI claims that Manager is obligated pursuant to a put option ("**the Put**") contained in that Agreement to purchase CTCI's non-existent interest in the dissolved Operator. In the Purchase Agreement, the following language appears regarding when the put may be exercised.

> 2.(b)  The Put may be exercised by the Investor Member at any time during the six (6) months beginning on January 1 of the first calendar year beginning after the year in which the QRE Completion Date occurs (or, if earlier, the date of dissolution of the Company) (the "Put Option Period").

That same language was carried over and included in an Amended and Restated Purchase Agreement, dated May 31, 2007. CTCI and Manager executed a First Amendment to the Amended and Restated Purchase Agreement on June 28, 2012, extending the Put Option Period to August 1, 2012.

On July 24, 2012, CTCI and Manager executed a Second Amendment to the Amended and Restated Purchase Agreement extending the Put Option Period to October 1, 2012. The First and Second Amendment to the Amended and Restated Purchase Agreement both modified Section 2(b) of the Purchase Agreement. Relevant herein is the language in the Second Amendment to Amended and Restated Purchase Agreement, which provides:

> (b) The Put may be exercised by the Investor Member at any time prior to October 1, 2012 (or if earlier, the date of dissolution of the Company) (the "Put Option Period").

This amendment was signed by Alan E. Levine of CTCI and Carolyn Martin on behalf of Manager. This is the amendment to the Purchase Agreement that was in effect at the time of dissolution of Operator (September 5, 2012). CTCI did not exercise the Put within the time constraints contained therein; and, therefore, any effort to exercise the Put or subsequent efforts to cure CTCI's untimeliness are of no effect.

## Seventh Affirmative Defense

Once Operator was dissolved, there was nothing for CTCI to "put" to Manager. CTCI is, therefore, asking for an impossibility.

## Eighth Affirmative Defense

In its complaint, CTCI has made a claim for a preferred return on account of its equity interest in Operator pursuant to the Operating Agreement. To the extent the operations of the Hotel did not generate sufficient funds or the sale of the Hotel did not generate sufficient funds to pay the Preferred Return, CTCI contends Manager was required to make a loan to Operator to fund CTCI's equity distribution, i.e. the "preferred return". A distribution to an equity owner by an insolvent corporation is prohibited by La R.S. 12:1327. Operator is an insolvent and dissolved entity. Thus, to the extent CTCI is seeking advances by Manager to Operator to be used by Operator to fund a distribution to CTCI, pursuant to Section 6.2 of the Operating Agreement of

Operator, the requested distribution is prohibited pursuant to La. R.S. 12:1327 and La. Civ. Code art. 2036, *et seq.*

### **Ninth Affirmative Defense**

Operator, while running the Hotel, frequently posted net operating losses. Operator would not have survived were it not for subsidies from Manager or its affiliates and waiver of rent payments by Owner. At the time of the sale of the Hotel by Owner, termination of the leasehold interest by Owner and Operator, the sale of the movable assets of Operator, and after sale proceeds were received, Operator was insolvent. Operator owed significant sums to Manager and affiliates of Manager for "project expense loans." Any loan made to Operator by Manager, pursuant to Section 6.2 of the Operating Agreement of Operator, would be paid out pursuant to the hierarchy of Distributions of Capitol Proceeds outlined in paragraph 6.2(B) of the Operating Agreement. Under that hierarchy, all "loaned" funds must be used to satisfy prior obligations, and there would be no funds for a distribution to CTCI.

### **Tenth Affirmative Defense**

At the time of the sale of the hotel by Owner and the termination of leasehold interest between Manager and Owner, as lessee and lessor, respectively, CTCI was under an IRS audit for this historic tax credit investment and others, wherein the IRS was contending that, because CTCI had no downside risk in its investment in Operator, it was truly not a "partner" or "member" and, thus, could not take advantage of tax credits CTCI was claiming. At the time of the closing on the sale of the Hotel and termination of the aforementioned described leasehold interest, CTCI's president, Alan Levine, asked Manager to withhold any distributions from the sale of the Hotel or dissolution of Operator and to use any such proceeds to pay the attorneys' fees CTCI was incurring in connection with the IRS audit. To that end, and pursuant to that verbal agreement, Manager has paid attorneys' and accountants' fees at CTCI's request and for

CTCI's benefit. Because of Mr. Levine's request, CTCI is also estopped from pursuing any amounts from Manager and, in the alternative, the amounts paid by Manager for the sole benefit of CTCI in the form of attorneys' and accountants' fees are an offset (or set off) to any amounts claimed by CTCI herein.

### Eleventh Affirmative Defense

CTCI herein is claiming certain categories of payments in the form of "unpaid and prorated asset management fees" (plus interest) and "unpaid and prorated Priority Return" (and interest) for a period of time estimated to be through 2015. Because there was a terminating event on September 5, 2012 dissolving Operator, CTCI cannot claim sums due on return from the operation of Operator, when Operator was clearly out of business and insolvent. Alternatively, it is disingenuous and opportunistic, as well as legally impossible, for CTCI to seek any sums after September 5, 2012, from Operator, Manager or WMF.

### Twelfth Affirmative Defense

CTCI failed to mitigate its damages by declining to be paid the Put, when the Hotel was sold, but now is requesting payment after Operating Company has been dissolved and is insolvent. CTCI declined to be paid the Put at the time of the asset sale because it wished to appear to have an "at risk" investment while the IRS proceeding continued. By consciously failing to accept payment when payment was available, CTCI has failed to mitigate its damages.

### Thirteenth Affirmative Defense

CTCI seeks fees and interest for years in which Operating Company was legally dissolved. Operating Company could not have legally incurred obligations after 2012, when it was legally dissolved. No fees or interest accrued after Operation Company's termination and cannot be sought herein.

# AFFIRMATIVE DEFENSES BY WMF

### Fourteenth Affirmative Defense

WMF incorporates and adopts, as an alleged accessory obligor, the affirmative defenses 1 through 11 delineated above by Manager.

### Fifteenth Affirmative Defense

WMF's alleged guaranty is delineated in paragraph 1 of the Guaranty Agreement, dated December 29, 2005. That paragraph provides:

> 1. The Guarantor hereby unconditionally and irrevocably guarantees to the Investor Member, to the extent not paid or performed by the Managing Member or the Company, as the case may be, the punctual payment when due, and at all times thereafter, of (i) to make Project Expense Loans in accordance with the provisions of Section 5.5 of the Operating Agreement, (ii) the obligation of the Landlord to complete the Rehabilitation and achieve the Completion Date, (iii) each and every obligation of the Company and the Managing Member to make any payment or advance any funds under the terms and conditions of Section 5.3, Section 6.2C, Section 6.2D an Section 7.4N of the Operating Agreement and under the Purchase Agreement, (iv) any liability arising out of a violation of the Managing Member of any Environmental Law, and (v) each and every obligation of the Landlord under the HIC Pass-Through Agreement.

This delineates the extent of Guarantor's obligation. Items (i), (ii), (iv) and (v) have either been fulfilled or became unnecessary through the date of the sale of the Hotel and dissolution of Operator on September 5, 2012. The conditions of Subpart (iii) is to guarantee loans to be made by Manager to Operator, and the distribution of those loan funds to CTCI is a prohibited distribution pursuant to La. R.S. 12:1327 and La. Civ. Code art. 2036, *et seq.*

### Sixteenth Affirmative Defense

An accessory obligation, such as a guaranty, cannot exceed the underlying obligation--in this case, of Manager. Any direct obligation on the part of WMF and CTCI would have to be in the form of a separate agreement between WMF and CTCI. No such agreement exists, and there

was no consideration for such a direct obligation. It is also against public policy for the accessory obligation to exceed the obligation being guaranteed.

**NOW, IN ANSWER** to the Complaint of CTCI, Defendants, Manager and WMF, respectfully deny each and every allegation contained therein, except as may be hereinafter expressly admitted.

1.

Defendants admit that CTCI is a California corporation. The remainder of Paragraph 1 of the Complaint is denied for lack of sufficient knowledge to justify belief.

2.

Capitol House Hotel Manager, LLC is a limited liability company under the laws of the State of Louisiana. Its sole member is Capitol House Hotel, LLC (**"CHH"**) and not Capitol House Hotel Operating Company, LLC (**"Operating Company"**). The remainder of the allegations contained in Paragraph 2 of the Complaint are denied.

3.

The allegations contained in Paragraph 3 of the Complaint are admitted.

4.

Paragraph 4 of the Complaint does not require an answer, but to the extent an answer is deemed necessary, the allegations contained in Paragraph 4 of the Complaint are denied.

5.

The allegations contained in Paragraph 5 of the Complaint are admitted, except Defendants deny that any amount is due CTCI from them.

6.

The allegations contained in Paragraph 6 of the Complaint are admitted.

7.

The allegations contained in Paragraph 7 of the Complaint are denied, except to the extent it is admitted that CTCI invested in the Operating Company.

8.

The allegations contained in Paragraph 8 of the Complaint are denied, except to the extent it is admitted there are various documents related to CTCI's acquisition of an interest in the Operating Company, and those documents are the best evidence of their respective terms.

9.

The allegations contained in Paragraph 9 of the Complaint are denied, except to the extent it is admitted there are agreements between WMF and CTCI, and those documents are the best evidence of their respective terms.

10.

The allegations contained in Paragraph 10 of the Complaint are denied, except to the extent it is admitted that, on May 31, 2007, an Amended and Restated Purchase Agreement was executed. That document is the best evidence of its own terms.

11.

The allegations contained in Paragraph 11 of the Complaint are denied, except to the extent it is admitted there were multiple amendments executed amending the Amended and Restated Purchase Agreement, and those amendments are the best evidence of their respective terms.

12.

The allegations contained in Paragraph 12 of the Complaint are denied, except to the extent it is admitted that additional agreements between WMF and CTCI were executed, and those documents are the best evidence of their respective terms.

1626132.1

13.

The allegations contained in Paragraph 13 of the Complaint are denied. It is, however, admitted that CTCI sent a letter, dated November 19, 2015, purporting to exercise certain rights CTCI believed it had under the Purchase Agreement as amended on multiple occasions. The exercise of this "put" for CTCI to sell its interest in the dissolved Operating Company was untimely, impossible and, thus, improper, and not of any legal efficacy.

14.

The allegations contained in Paragraph 14 of the Complaint are denied.

15.

The allegations contained in Paragraph 15 of the Complaint are denied, except to the extent it is admitted that, on November 3, 2016, CTCI, through counsel, sent a letter demanding sums that were not due it from either defendant.

16.

The allegations contained in Paragraph 16 of the Complaint are denied.

17.

The allegations contained in Paragraph 17 of the Complaint are denied. No sums were due under the untimely and impossible exercise of a put in a dissolved entity.

18.

The allegations contained in Paragraph 18 of the Complaint are denied.

19.

The allegations contained in Paragraph 19 of the Complaint are denied. Manager does not owe the sums CTCI was requesting. All sums due CTCI have been paid.

20.

The allegations contained in Paragraph 20 of the Complaint are denied.

1626132.1

21.

Paragraph 21 of the Complaint does not require a response. However, to the extent an answer is deemed necessary, Paragraph 21 of the Complaint is denied.

22.

The allegations contained in Paragraph 22 of the Complaint are denied.

23.

The allegations contained in Paragraph 23 of the Complaint are denied.

24.

The allegations contained in Paragraph 24 of the Complaint are denied.

25.

The allegations contained in Paragraph 25 of the Complaint are denied.

26.

The allegations contained in Paragraph 26 of the Complaint are denied.

27.

The allegations contained in Paragraph 27 of the Complaint are denied.

28.

Paragraph 28 of the Complaint does not require an answer. However, to the extent an answer is deemed necessary, Paragraph 28 of the Complaint is denied.

29.

The allegations contained in Paragraph 29 of the Complaint are denied.

30.

The allegations contained in Paragraph 30 of the Complaint are denied.

31.

The allegations contained in Paragraph 31 of the Complaint are denied.

32.

The allegations contained in Paragraph 32 of the Complaint are denied.

33.

The allegations contained in Paragraph 33 of the Complaint are denied.

34.

The allegations contained in Paragraph 34 of the Complaint are denied.

35.

Paragraph 35 of the Complaint calls for a legal conclusion, but to the extent an answer is deemed necessary, Paragraph 35 of the Complaint is denied.

36.

The allegations contained in Paragraph 36 of the Complaint are denied. In further answer to Paragraph 36 of the CTCI Complaint, Defendants aver that the documents referenced therein are the best evidence of their own terms.

37.

The allegations contained in Paragraph 37 of the Complaint are denied. In further answer to Paragraph 37 of the CTCI Complaint, Defendants aver that the documents referenced therein are the best evidence of their terms.

38.

The allegations contained in Paragraph 38 of the Complaint are denied.

39.

The allegations contained in Paragraph 39 of the Complaint are denied.

40.

The allegations contained in Paragraph 40 of the Complaint are denied.

1626132.1

41.

The allegations contained in Paragraph 41 of the Complaint are denied.

42.

The allegations contained in Paragraph 42 of the Complaint are denied.

**WHEREFORE,** Capitol House Hotel Manager, LLC and The Wilbur Marvin Foundation pray that this answer be deemed good and sufficient and that, after all due proceedings are had, judgment be rendered herein in their favor and against Chevron TCI, Inc., dismissing all claims of Chevron TCI, Inc., with prejudice, at plaintiff's costs.

RESPECTFULLY SUBMITTED,

By Attorneys:

**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, Suite 2300 (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029

*/s/ Claude F. Reynaud, Jr.*
Claude F. Reynaud, Jr. (La. #11197)
*claude.reynaud@bswllp.com*
Jeanne C. Comeaux (#22999)
*jeanne.comeaux@bswllp.com*
Danielle L. Borel (La. Bar Roll No. 35669)
*danielle.borel@bswllp.com*

*Attorneys for Capitol House Hotel Manager, LLC and The Wilbur Marvin Foundation*

1626132.1

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHEVRON TCI, INC., | : | **CIVIL ACTION NO. 3:18-cv-00776-BAJ-RLB** |
| Plaintiff | : | |
| | : | |
| | : | JUDGE BRIAN A. JACKSON |
| VERSUS | : | |
| | : | |
| CAPITOL HOUSE HOTEL MANAGER, LLC, and THE WILBUR MARVIN FOUNDATION, | : | MAG. JUDGE RICHARD L. BOURGEOIS, JR. |
| Defendants. | | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 18, 2018, a copy of the above and foregoing *Answer and Affirmative Defenses to Complaint* was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/ Claude F. Reynaud, Jr.*
Claude F. Reynaud, Jr. (#11197)
**BREAZEALE, SACHSE & WILSON, L.L.P.**
301 Main Street, Suite 2300 (70801)
Post Office Box 3197
Baton Rouge, Louisiana 70821-3197
Telephone: 225-387-4000
Facsimile: 225-381-8029
*claude.reynaud@bswllp.com*