UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHEVRON TCI, INC.                                                  CIVIL ACTION

VERSUS
                                                                   NO. 18-776-BAJ-RLB
CAPITOL HOUSE HOTEL
MANAGER, LLC, ET AL.
                                    **ORDER**

Before the Court is Plaintiff's Motion for Protective Order (R. Doc. 24). In lieu of filing a separate opposition, Defendants filed a Motion to Compel (R. Doc. 27), which is also before the Court. Plaintiff then filed a memorandum serving both as an opposition to Defendants' Motion to Compel and as a reply in support of Plaintiffs' Motion for Protective Order. (R. Doc. 33). Defendants filed a reply in support of their Motion to Compel (R. Doc. 41) with exhibits filed under seal (R. Doc. 42) (sealed).

Also before the Court is Defendants' Motion for Protective Order (R. Doc. 28). The motion is opposed. (R. Doc. 30). Defendants filed a reply. (R. Doc. 36).

**I.     Background**

This is a breach of contract action in which Chevron TCI, Inc. ("Plaintiff" or "Chevron TCI" or "CTCI") alleges that it is entitled to recover approximately $11 million from Capitol House Hotel Manager, LLC ("Capital House Manager") and/or the Wilbur Marvin Foundation ("WMF") (collectively, "Defendants"). (R. Doc. 1, "Compl.").

CTCI alleges that in 2005, it invested in Capitol House Hotel Operating Company, LLC ("Capital House Operator") "which was formed to lease, hold, maintain, and operate a hotel and commercial space in downtown Baton Rouge, now know as the Hilton Capital Center." (Compl. ¶ 7). CTCI represents that the "project was eligible for the federal Historic Tax Credit (HTC)

program, which encourages private sector investment in the rehabilitation and re-use of historic buildings." (R. Doc. 24-1 at 3).

Defendants represent that on December 19, 2005, Capital House Manager, Capital House Operator, and Capital House Hotel Development Company, LLC ("Capital House Owner") were organized as limited liability companies under Louisiana law. (R. Doc. 27-1 at 4). Defendants assert that Capital House Owner leased the hotel to Capital House Operator and "there was an historic tax credit pass-through agreement allowing CTCI to receive the income tax credits, even though the entity in which it invested (Operator) did not own the building that was being improved." (R. Doc. 27-1 at 4). CTCI represents that under Capital House Operator's operating agreement, Capital House Manager would manage Capital House Operator and CTCI would receive tax credits for an investment of $11,909,779, payable in two installments, which CTCI paid. (R. Doc. 24-1 at 3).

On December 29, 2005, CTCI entered into a Purchase Agreement with Capital House Manager with a six-month "put option period" to elect to sell its membership interest in Capital House Operator to Capitol House Manager. (Compl. ¶ 8; *see* R. Doc. 1-1).[1] That same day, Plaintiff also entered into a Guaranty Agreement with WMF in which WMF guaranteed all obligations of Capitol House Manager within the Purchase Agreement. (Compl. ¶ 9; *see* R. Doc. 1-2). The Purchase Agreement has been amended several times, with the seventh and final amendment providing that the purchase option period ended on December 31, 2015. (Compl. ¶ 10-11; *see* R. Docs. 1-3, 1-4). In addition, each of the Amended and Restated Purchase Agreements contains an acknowledgement that the Guaranty Agreement remains in full effect except to the extent the Purchase Agreement is amended. (Compl. ¶ 12; *see* R. Docs. 1-3, 1-4).

---

[1] Defendants' Answer asserts that Capital House Manager held a 0.1% interest and CTCI held a 99.9% interest in Capital House Operator. (R. Doc. 9 at 1).

2

Capital House Operator was under IRS audits with respect to CTCI's claimed historic tax credit for the years 2006-2011. (R. Doc. 27-1 at 6). Defendants assert that during this audit CTCI took the position that it was a "true partner" with Capital House Operator and, accordingly, could avail itself of the full historic tax credit, but ultimately settled with the IRS by receiving two-thirds of the historic tax credit. (R. Doc. 27-1 at 6-7).

Defendants represent that on September 5, 2012, Capital House Owner and Capital House Operator "terminated the lease between them" and Capital House Owner sold the hotel, including fixtures and other assets, to a third party. (R. Doc. 27-1 at 5). Defendants assert that Capital House Operator "was terminated and dissolved" in light of the language of Section 2.5(A)(i) of its Operating Agreement. (R. Doc. 27-1 at 5).[2] Defendants further assert that CTCI consented to the sale and termination of the lease, and CTCI lost its right to a put option payment in light of the termination of Capital House Operator as an entity. (R. Doc. 27-1 at 6). CTCI argues that Louisiana law has additional requirements for the termination of a limited liability company, notwithstanding the language in Capital House Operator's Operating Agreement. (R. Doc. 33 at 3).

Capital House Operator was also under an IRS audit with respect to CTCI's claimed historic tax credit for the years 2012-2013. (R. Doc. 27-1 at 6-7). Defendants represent that during this audit CTCI signed a Form 870-PT agreeing with the IRS' conclusion that Capital House Operator was terminated as an entity in 2012 given the termination of the lease and sale of assets. (R. Doc. 27-1 at 7).

---

[2] Section 2.5(A)(i) of its Operating Agreement provides the following: "[Capital House Operator] shall continue in full force and effect until December 31, 2055, except that [Capital House Operator] shall be dissolved prior to such date upon the happening of . . . The termination or expiration of the Lease or the sale or other disposition of all or substantially all the assets of [Capital House Operator] (including, without limitation, the Leasehold Interest)." (R. Doc. 42-2 at 31).

3

On November 19, 2015, CTCI demanded Capitol House Manager to purchase its interest in Capital House Operator for $10,554,519. (Compl. ¶ 13). Neither Capital House Manager nor WMF paid the amount sought. (Compl. ¶ 14). CTCI is now seeking recovery for breach of the Purchase Agreement and Guaranty Agreement.

The instant discovery motions concern written discovery served on CTCI and certain topics of the parties' Rule 30(b)(6) deposition. The main disputes with respect to the discovery at issue is whether and to what extent information regarding other historic tax credit investments entered into between CTCI with third parties, including any representations CTCI made to the IRS with respect to those investments and other agreements drafted by counsel for CTCI for the purposes of those investments, fall within the scope of discovery. Defendants assert that statements made by CTCI to the IRS with respect to these other investments "could be an admission and likely will be an admission against its interest in this suit" should CTCI have taken the position that it had "substantial risk" in those other investments. (R. Doc. 27-1 at 7). Defendants further assert that because counsel for CTSI drafted the agreements at issue in this action, other purchase, guaranty, and operating drafted by counsel for CTCI constitute relevant information with respect to whether Capital House Operator was terminated and dissolved prior to the put option and, if so, whether that dissolution renders the put option unenforceable. (R. Doc. 27-1 at 16-20). CTCI objects to the discovery sought on various bases, including relevance, proportionality, and confidentiality concerns.

## II. Law and Analysis

### A. Legal Standards for Discovery

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at

4

stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Blanket assertions of a privilege are unacceptable, and the court and other parties must be able to test the merits of a privilege claim. *United States v. El Paso Co.*, 682 F.2d

5

530, 541 (5th Cir. 1982) (citing *United States v. Davis,* 636 F.2d 1028, 1044 n. 20 (5th Cir. 1981)).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories. A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

A party must respond or object to interrogatories and requests for production. *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A). This default date may be modified by stipulation between the parties. Fed. R. Civ. P. 29(b). If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

Rule 30(b)(6) governs deposition notices directed to organizations. In the deposition notice, the party "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In response, the organization must designate an agent or other person to testify on its behalf "about information known or reasonably available to the organization." *Id*. "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The

6

deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). The court may limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous. *See*, *e.g.*, *Scioneaux v. Elevating Boats, LLC*, No. 10-0133, 2010 WL 4366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, No. 05-4182, 2008 WL 4833023 (E.D. La. July 2, 2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous); *Padana Assicurazioni–Societa Azioni v. M/V Caribbean Exp.*, No. 97-3855, 1999 WL 30966 (E.D. La. Jan. 21, 1999) (denying motion to compel Rule 30(b)(6) deposition where the notice was insufficiently particularized).

B. **CTCI's Motion for Protective Order (R. Doc. 24) and Defendants' Motion to Compel (R. Doc. 27)**

CTCI's Motion for Protective Order (R. Doc. 24) and Defendants' Motion to Compel (R. Doc. 27) concern Defendant's Requests for Production Nos. 19, 20, 35-37 (R. Doc. 24-2), Interrogatory Nos. 6-10 (R. Doc. 24-3), and Topics 21-26 of the Notice of Rule 30(b)(6) Deposition of CTCI (R. Doc. 24-4). CTCI raised various objections to these discovery requests (R. Doc. 27-2, 27-8), Defendants raised certain issues in a discovery letter (R. Doc. 27-9), and CTCI provided certain supplemental responses (R. Doc. 27-10). It is unclear whether CTCI provided written objections to the Rule 30(b)(6) deposition notice.[3] The Rule 30(b)(6)

---

[3] CTCI's Motion for Protective Order filed on May 24, 2019 does not provide "certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action" as required by Rule 26(c)(1) of the Federal Rules of Civil Procedure. Likewise, CTCI's Motion for Protective Order does not provide copies of its responses or objections to the discovery requests at issue as required by Local Rule 37. Defendants' Motion to Compel, however, provides that the parties conferred with respect to the deposition topics on April 23, 2019 and the requests for production on May 22, 2019. (R. Doc. 27-12). It is unclear

Deposition of CTCI appears to have been taken on June 27, 2019 with respect to the topics not in dispute.

### 1. Assertions of Privilege

In response to the written discovery requests at issue, CTCI raises various objections under the attorney-client privilege and the work product doctrine. Defendants represent that CTCI "has not submitted a privilege log or specified what documents it is withholding." (R. Doc. 27-1 at 15). To the extent CTCI has withheld any responsive documents on the basis of privilege, considering the scope of discovery as discussed in this Order, it must provide a privilege log consistent with Rule 26(b)(5)(A) within **7 days** of the date of this Order.

### 2. Louisiana Law on Contract Interpretation

This is a breach of contract action. The central dispute is whether and to what extent discovery of extrinsic evidence should be allowed to clarify the terms of the agreements at issue in light of CTCI's involvement in other historic tax credit investments and representations to the IRS with respect to those investments. Accordingly, the Court will consider whether and to what extent the pertinent law on contract interpretation allows for the admission of the extrinsic evidence of the type sought by Defendants.

The Court applies substantive state law in a diversity action. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *see ACS Construction Co., Inc. of Mississippi v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003) ("We look to state law for rules governing contract interpretation."). The Purchase Agreement provides that it "shall be construed in accordance with the internal law of the State of Louisiana." (R. Doc. 1-1 at 5). The Guarantee Agreement states that it "shall be governed by and construed in accordance with the internal law of the State of Louisiana." (R.

---

whether the parties specifically conferred with respect to the interrogatories at issue. Defendants supplied the Court with CTCI's responses to the discovery requests.

Doc. 1-2 at 5). Capital House Operator's Operating Agreement states that it "shall be construed in accordance with the internal laws of the State [of Louisiana]." (R. Doc. 42-2 at 82) (under seal). There is no dispute that Louisiana law applies to the interpretation of these contracts. Accordingly, the Court will consider Louisiana law with respect to the interpretation of the contracts for the purposes of resolving this discovery dispute.

"Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "The language of the policy is the starting point for determining that common intent." *Angus Chem. Co. v. Glendora Plantation, Inc.*, 782 F.3d 175, 180 (5th Cir. 2015) (quoting *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter." La. Civ. Code art. 2047. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. Civ. Code art. 2048.

"A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code art. 2049. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ. Code art. 2053. "Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and

that no one is allowed to enrich himself unjustly at the expense of another. Usage, as intended in the preceding articles, is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation." La. Civ. Code art. 2055.

"The determination of whether a contract is clear or ambiguous is a question of law. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate." *Angus Chem. Co.*, 782 F.3d at 180 (quoting *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 590 (La. 2007)). "[O]nly when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Amoco Prod. Co. v. Texas Meridian Res. Expl. Inc.*, 180 F.3d 664, 669 (5th Cir. 1999). "The Court may consider extrinsic evidence as to the parties' intent only if the contract is ambiguous." *Thorne v. Bard Peripheral Vascular, Inc.*, No. 16-0262, 2016 WL 3746148, at *4 (E.D. La. July 13, 2016) (citing *Campbell v. Melton*, 817 So. 2d 69, 75 (La. 2002)).

The parties rely upon various federal decisions that do not discuss the foregoing legislation with respect to contract interpretation under Louisiana law. The Court will consider the parties' arguments for and against the discovery sought in light of substantive Louisiana law.

### 3. The Information Sought

Defendants' Request for Production Nos. 19, 20, and 35 seek CTCI's positions taken with the IRS with respect to historic tax credits and its decision to stop investing in projects where it obtained historic tax credits:

**Request No. 19:** Please produce all documents reflective of positions you took with the IRS as a result of the decision of *Historic Boardwalk Hall, LLC v. Commissioner of Internal Revenue*, 694 Fed. 3d 425 (2012).[4]

**Request No. 20:** Please produce all documents reflective of any positions you took with the IRS arising out of Rev. Proc. 2014-12, released January 10, 2014, and its safe harbor for historic tax credits.

**Request No. 35:** Please produce all documents related to your decision to stop investing in projects wherein you obtained historic tax credits. Include in your response documents related to any global settlement with the IRS, if such documents exist.

While CTCI initially refused to provide any information, it supplemented its responses by indicating that it would produce responsive non-privileged documents "related to its investment" in Capital House Operator. (R. Doc. 27-10 at 21-22, 34).

Defendants' Interrogatory Nos. 6-10, Request for Production Nos. 36-37, and the Rule 30(b)(6) Deposition Topics 21-26 seek information related to tax credit investments, including those other than the one at issue:

**Interrogatory No. 6:** In your existence, how many entities in which "you" invested did you successfully claim historic tax credits for federal income tax purposes?

**Interrogatory No. 7:** Please identify all the entities in which "you" invested, as delineated in your answer to the preceding interrogatory.

**Interrogatory No. 8:** Of those entities identified in the two preceding interrogatories, how many times have "you" also obtained an actual return on your investment beyond the benefit of the tax credits.

**Interrogatory No. 9:** Of those entities identified in your answer to Interrogatory No.7, please identify those entities where "you" have sued the entity in which "you" invested, or other members of any such entity, to obtain a return on investment beyond the tax credits.

**Interrogatory No. 10:** Of those entities identified in your answer to Interrogatory No.7, please identify those entities upon whom "you" have made a demand for a return on investment beyond the benefit of the tax credits.

---

[4] In *Historic Boardwalk*, the Third Circuit found that an entity was not a "bona fide partner" eligible to receive an historic rehabilitation tax credit for its participation in a rehabilitation project where its potential return and risk of loss were subject to significant limitations.

11

**Request No. 36:** Please produce all documents, such as lists, reports, schedules, or similar documents, delineating all the historic tax credit investments made by you between January 1, 2004 and December 31, 2014.

**Request No. 37:** Please produce all documents reflective of demands made against historic tax credit co-owners or their affiliates and/or guarantors for repayment of sums allegedly due you as a result of your investment in a historic tax credit entity. In your response, please include all suits that you have filed against your former or present co-owners or their guarantors.

**Topic 21:** All matters regarding the financial benefit CTCI received for tax credits.

**Topic 22:** All matters regarding CTCI's efforts to enforce provisions of purchase agreements similar to the Purchase Agreement herein, dated December 29, 2005.

**Topic 23:** All matters regarding CTCI's efforts to enforce guaranty agreements, including, but not limited to, provisions similar to Sections 1(iii) and 6(xi) of the Guaranty Agreement between WMF and CTCI, dated December 29, 2005, in other instances wherein CTCI has made investments seeking historic tax credits.

**Topic 24:** All matters regarding CTCI's settlement with the IRS in connection with the audits of Operator for the years 2006 through 2013.

**Topic 25:** All matters regarding other historic tax credit investments of CTCI wherein the entity in which CTCI invested was dissolved and any effort to collect sums allegedly due from the dissolved entity and/or any guarantor.

**Topic 26:** All matters regarding CTCI's decision to stop investing in projects for the purpose of obtaining historic tax credits.

CTCI refused to provide answers, documents, or deposition testimony with respect to the foregoing discovery requests and deposition topics.

Defendants argue that the information sought falls within the scope of discovery because CTCI agreed to settle the first IRS audit by receiving two-thirds of the original intended historic tax credit and signed IRS Form 870-PT as an acknowledgement that Capital House Operator was dissolved on September 5, 2012. (R. Doc. 27-1 at 6-7). Defendants further argue that discovery of information with respect to CTCI's representations to the IRS during the audits and its decision to "get out of the business of historic tax credit investments" will lead to admissions that the investment at issue involved substantial risk. (R. Doc. 27-1 at 7). Defendants also argue that

because CTCI has agreed to produce non-privileged documents responsive to Request for Production Nos. 11-18, 21-25 (which seek certain tax-related information from 2006-2013, including information not specifically related to Capital House Operator),[5] then CTCI should not limit its responses to Request for Production Nos. 19, 20, and 35 to Capital House Operator. (R. Doc. 27-1 at 14).  Finally, Defendants more broadly argue that the information sought (including CTCI's "other tax credit deals" and tax returns) are relevant and proportional to the needs of the case. (R. Doc. 27-1 at 16-26)

Defendants argue that the information sought is relevant to several affirmative defenses. In their fourth, fifth, and sixth affirmative defenses, Defendants assert that Capital House Operator was terminated and dissolved as an entity by operation of Section 2.5(a)(i) of its Operating Agreement, which resulted in removing the put option in the Amended and Restated Purchase Agreements. (R. Doc. 9 at 3). In their third and tenth affirmative defenses, Defendants raised the defenses of unclean hands and estoppel, asserting that CTCI was not a "partner" which could take advantage of the historic tax credits. (R. Doc. 9 at 1-2, 5-6).

As stated above, "[t]he determination of whether a contract is clear or ambiguous is a question of law." *Angus Chem. Co.*, 782 F.3d at 180.  The Court will not determine whether the contract language at issue is ambiguous in the context of a discovery dispute.  That said, Defendants have not identified any specific language in the contracts at issue that they assert are ambiguous.  Indeed, Defendants assert that the Section 2.5(a)(i) of Capital House Operator's Operating Agreement "clearly provides" for the dissolution of Capital House Operator. (R. Doc. 27-1 at 17). Defendants further assert that the language in the Purchase Agreement, as amended, is "clear" with respect to the put option period with relation to the dissolution of Capital House

---

[5] These document requests are not the subject of the instant Motions.

Operator. (R. Doc. 27-1 at 17). At most, in a reply brief, Defendants assert that CTCI's Rule 30(b)(6) designee "created multiple ambiguities" with respect to certain contract language. (R. Doc. 41 at 1). To be clear, the deposition testimony does not compel a finding that the contracts are clear or ambiguous, which remains a question of law.

Regardless, the issue before the Court in the context of this discovery dispute is not whether the contract language is ambiguous, which can be determined later in the context of dispositive motions, but whether the extrinsic evidence sought falls within the scope of discovery. The Court concludes that CTCI's dealings with other entities, including the drafting of altogether different purchase, guaranty, and operating agreements and positions taken with the IRS with respect to those contracts, are not relevant to the claims or defenses of the parties in this breach of contract action. As stated above, Louisiana law allows for consideration of conduct and dealings *between the parties* to clarify ambiguities in a contract: "[a] doubtful provision must be interpreted in light of the nature of the contract, equity, usages, *the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties*." La. Civ. Code art. 2053 (emphasis added). Accordingly, while extrinsic evidence pertaining to the conduct of the parties, or previous contracts entered between the parties, is relevant to the claims and defenses of the parties, information pertaining to CTCI's other historic tax credit engagements is not.

Defendants have raised no convincing arguments to allow open-ended discovery into CTCI's past investments and dealings with the IRS. Defendants have not cited a single decision relying upon substantive Louisiana law holding that third-party contracts constitute admissible extrinsic evidence for the purposes of interpreting later contracts entered into between the parties. Defendants appear to argue that because counsel for CTCI drafted the contracts (which Defendants characterize as "form" or "canned" contracts), they should be entitled to conduct

discovey into the hundreds of partnerships that CTCI asserts it invested with respect to historic tax credits beginning in 2000. (*See* R. Doc. 41 at 2-3). To the extent Defendants successfully argue that the multi-million dollar contracts they entered, with the benefit of counsel, constitute "form" contracts or contracts of adhesion, any doubt in the contractual language will be resolved in their favor pursuant to Louisiana Civil Code art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."); *see Shocklee v. Massachusetts Mut. Life Ins. Co.*, No. 00-279, 2003 WL 25739170, at *2 (M.D. La. Aug. 1, 2003) (where there is no way to resolve doubt about the meaning of a contract term the court must resolve the doubt against the drafter pursuant to Article 2056). Defendants have not convinced the Court, however, that the fact that CTCI provided language for the contracts at issue opens the door to discovery into hundreds of other deals entered into with CTCI concerning other parties and other properties. Even if such information is relevant, such open-ended discovery is overly broad and disproportionate to the needs of this case.

The Court does, however, find that the discovery requests and deposition topics seek information within the scope of discovery to the extent they pertain to Capital House Operator and the investment at issue. It appears that CTCI has provided supplemental responses with respect to some of the discovery requests to the extent that they pertain to Capital House Operator. CTCI must update its responses to Defendants' Interrogatory Nos. 6-10 and Defendants' Request for Production Nos. 19, 20, 35-37 to the extent they seek information that has not been previously provided, including any tax information in CTCI's possession, custody, or control, pertaining to Capital House Operator and the investment at issue. While it is unclear whether and to what extent any tax records or statements by CTCI to the IRS pertaining to

Capital House Operator and the investment at issue will ultimately be admissible, the Court finds the information to be relevant and proportional to the needs of this case. CTCI must similarly provide a Rule 30(b)(6) representative to testify with respect to Topic Nos. 21-26 to the extent they pertain to Capital House Operator and the investment at issue.[6]

In sum, CTCI must provide supplemental responses to Defendants' Interrogatory Nos. 6-10 and Defendants' Request for Production Nos. 19, 20, 35-37, as limited in this Order, within **7 days** of the date of this Order. CTCI must provide a corporate representative for a Rule 30(b)(6) deposition on Topic Nos. 21-26, as limited in this Order, within **30 days** of the date of this Order. CTCI may make any necessary confidentiality designations in accordance with the Protective Order issued in this action governing the exchange of confidential information. (R. Doc. 23). As the Court is granting and denying the foregoing motions in part, the parties shall bear their own costs. *See* Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5)(C).

### C.     Defendants' Motion for Protective Order (R. Doc. 28)

Defendants' Motion for Protective Order (R. Doc. 26) concerns Topic 17 of the Notice of Rule 30(b)(6) Deposition of Capital House Manager served on May 17, 2019 and setting the deposition for June 26, 2019. (R. Doc. 28-1). CTCI represents the parties held a discovery conference on May 22, 2019 and discussed the objection to "Topic 17 as not relevant and premature" as it seeks information on the ability of Defendants to make certain payments and amounts to a judgment debtor exam. (R. Doc. 36 at 5).[7] The parties agreed to reschedule the deposition for July 2-3, 2019. After the instant Motion for Protective Order was filed,

---

[6] The corporate representative must be prepared to respond to Topic 24 in full as it directly pertains to Capital House Operator and the investment at issue.

[7] The original "Rule [26] Certificate" provided that this discussion occurred on April 23, 2019. (R. Doc. 28). In reply, Plaintiff's counsel submits "Corrected Rule [26] Certificate" providing that the conference was on May 22, 2019 (R. Doc. 36 at 5) and represents that objections to Topic 17 were made on that date (R. Doc. 36 at 2). The record further provides that on June 23, 2019 Plaintiff's counsel stated, "We are going to object to #17" (R. Doc. 30-1) and, in a follow-up letter, stated, "As I told you before, we are objecting to No. 17" (R. Doc. 30-2).

Defendants served a revised deposition notice setting the deposition to commence on July 2, 2019, and providing the same language for Topic 17. (R. Doc. 36-2). It is unclear whether and to what extent the Rule 30(b)(6) deposition was conducted.

CTCI raises no specific argument with respect to the actual language of Topic 17 at issue, which seeks facts related to the claimed insolvency of Defendants and their ability to make certain payments. Instead, CTCI states that Topic 17 "should have" sought information with respect to the insolvency of the non-party Capital House Operator, represents that the parties did not actually hold a conference with respect to Topic 17, and argues that the information sought (with respect to the insolvency of the non-party Capital House Operator) is discoverable. (R. Doc. 30 at 4-9).

The Court agrees with Defendants' argument in reply that CTCI is defending a version of Topic 17 that was not noticed to Defendants. (R. Doc. 36 at 2-3). It appears that CTCI has withdrawn Topic 17 as written. Accordingly, the Court will grant the instant motion with respect to precluding testimony on Topic 17 as written. CTCI must serve a new deposition notice with respect to the revised version of Topic 17, if it has not done so already, to obtain the information sought.

CTCI must serve any new deposition notice, limited to Topic 17 as revised, within **7 days** of the date of this Order, if it has not done so already. Unless otherwise objectionable, Capital House Manager must provide a corporate representative for a Rule 30(b)(6) deposition on Topic 17, as revised, and any other topics on which the parties postponed the deposition of Capital House Manager, within **30 days** of the date of this Order. As it is unclear what issues counsel for the parties discussed with respect to Topic 17 prior to the filing of the instant motion, the finds the circumstances make an award of expenses unjust. *See* Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5)(A).

17

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Plaintiff's Motion for Protective Order (R. Doc. 24) is **GRANTED** and Defendants' Motion to Compel (R. Doc. 27) are **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Protective Order (R. Doc. 28) is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on November 4, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**