UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHEVRON TCI, INC.                                          CIVIL ACTION

VERSUS

                                                           NO. 18-776-BAJ-RLB

CAPITOL HOUSE HOTEL
MANAGER, LLC, ET AL.

## ORDER

Before the Court is Plaintiff's Motion to Compel or Authorize Deposition and Production of Documents. (R. Doc. 46). The exhibits were filed under seal. (R. Doc. 50). The motion is opposed. (R. Docs. 51, 60).[1] Plaintiff filed reply memoranda. (R. Doc. 57, 63).

The Court held oral argument on March 3, 2020. (R. Doc. 77).

**I.     Background**

This is a breach of contract action in which Chevron TCI, Inc. ("Plaintiff" or "Chevron TCI" or "CTCI") alleges that it is entitled to recover approximately $11 million from Capitol House Hotel Manager, LLC ("Capital House Manager") and/or the Wilbur Marvin Foundation ("WMF") (collectively, "Defendants"). (R. Doc. 1, "Compl.").

CTCI alleges that in 2005, it invested in Capitol House Hotel Operating Company, LLC ("Capital House Operator" or "Company") "which was formed to lease, hold, maintain, and operate a hotel and commercial space in downtown Baton Rouge, now known as the Hilton Capital Center." (Compl. ¶ 7). CTCI represents that the "project was eligible for the federal

---

[1] CTCI argues that the opposition filed by the third-parties KMPG LLP and Shannon Kirkpatrick was not filed within the 21 days provided by Local Rule 7(f), and should therefore be struck from the record. (*See* R. Doc. 63 at 3). The Court disagrees. Foremost, it appears that CTCI's certificate of service represents that the third-parties' counsel was served with the motion "via the CM/ECF . . . system" on November 1, 2019. (R. Doc. 46 at 2). The third-parties' counsel did not make an appearance until filing an opposition on December 12, 2019. (*See* R. Doc. 60). It is therefore unclear when and how the motion was served on the third parties. At any rate, to the extent necessary, the Court finds good cause to deem the opposition timely under Local Rule 7(f).

Historic Tax Credit (HTC) program, which encourages private sector investment in the rehabilitation and re-use of historic buildings." (R. Doc. 24-1 at 3).

Defendants represent that on December 19, 2005, Capital House Manager, Capital House Operator, and Capital House Hotel Development Company, LLC ("Capital House Owner") were organized as limited liability companies under Louisiana law. (R. Doc. 27-1 at 4). Defendants assert that Capital House Owner leased the hotel to Capital House Operator and "there was an historic tax credit pass-through agreement allowing CTCI to receive the income tax credits, even though the entity in which it invested (Operator) did not own the building that was being improved." (R. Doc. 27-1 at 4). CTCI represents that under Capital House Operator's operating agreement, Capital House Manager would manage Capital House Operator and CTCI would receive tax credits for an investment of $11,909,779, payable in two installments, which CTCI paid. (R. Doc. 24-1 at 3).

On December 29, 2005, CTCI entered into a Purchase Agreement with Capital House Manager with a six-month "put option period" to elect to sell its membership interest in Capital House Operator to Capitol House Manager. (Compl. ¶ 8; *see* R. Doc. 1-1).[2] That same day, CTCI also entered into a Guaranty Agreement with WMF in which WMF guaranteed all obligations of Capitol House Manager within the Purchase Agreement. (Compl. ¶ 9; *see* R. Doc. 1-2). The Purchase Agreement has been amended several times, with the seventh and final amendment providing that the purchase option period ended on December 31, 2015. (Compl. ¶ 10-11; *see* R. Docs. 1-3, 1-4). In addition, each of the Amended and Restated Purchase Agreements contains an acknowledgement that the Guaranty Agreement remains in full effect except to the extent the Purchase Agreement is amended. (Compl. ¶ 12; *see* R. Docs. 1-3, 1-4).

---

[2] Defendants' Answer asserts that Capital House Manager held a 0.1% interest and CTCI held a 99.9% interest in Capital House Operator. (R. Doc. 9 at 1).

Capital House Operator was under IRS audits with respect to CTCI's claimed historic tax credit for the years 2006-2011. (R. Doc. 27-1 at 6). Defendants assert that during this audit CTCI took the position that it was a "true partner" with Capital House Operator and, accordingly, could avail itself of the full historic tax credit, but ultimately settled with the IRS by receiving two-thirds of the historic tax credit. (R. Doc. 27-1 at 6-7).

Defendants represent that on September 5, 2012, Capital House Owner and Capital House Operator "terminated the lease between them" and Capital House Owner sold the hotel, including fixtures and other assets, to a third party. (R. Doc. 27-1 at 5). Defendants assert that Capital House Operator "was terminated and dissolved" in light of the language of Section 2.5(A)(i) of its Operating Agreement. (R. Doc. 27-1 at 5).[3] Defendants further assert that CTCI consented to the sale and termination of the lease, and CTCI lost its right to a put option payment in light of the termination of Capital House Operator as an entity. (R. Doc. 27-1 at 6). CTCI argues that Louisiana law has additional requirements for the termination of a limited liability company, notwithstanding the language in Capital House Operator's Operating Agreement. (R. Doc. 33 at 3).

Capital House Operator was also under an IRS audit with respect to CTCI's claimed historic tax credit for the years 2012-2013. (R. Doc. 27-1 at 6-7). Defendants represent that during this audit CTCI signed a Form 870-PT agreeing with the IRS' conclusion that Capital House Operator was terminated as an entity in 2012 given the termination of the lease and sale of assets. (R. Doc. 27-1 at 7).

---

[3] Section 2.5(A)(i) of its Operating Agreement provides the following: "[Capital House Operator] shall continue in full force and effect until December 31, 2055, except that [Capital House Operator] shall be dissolved prior to such date upon the happening of . . . The termination or expiration of the Lease or the sale or other disposition of all or substantially all of the assets of [Capital House Operator] (including, without limitation, the Leasehold Interest)." (R. Doc. 42-2 at 31).

On November 19, 2015, CTCI demanded Capitol House Manager to purchase its interest in Capital House Operator for $10,554,519. (Compl. ¶ 13). Neither Capital House Manager nor WMF paid the amount sought. (Compl. ¶ 14). CTCI is now seeking recovery for breach of the Purchase Agreement and Guaranty Agreement.

## II. The Motion to Compel

The instant discovery motion concerns whether and to what extent Shannon Kirkpatrick ("Kirkpatrick"), a CPA with KPMG, LLG ("KPMG"), must provide testimony and documents in response to a Rule 45 subpoena served on her by CTCI. CTCI represents that "[f]rom 2008 to 2013, Kirkpatrick prepared and filed all of the Company's tax returns, and through 2018, she continued to service the Company's and CTCI's tax needs (as CTCI was 99% owner of the Company) as it involved the Company." (R. Doc. 46-1 at 2). There is no dispute that both CTCI and the defendants, Capital House Manager and WMF, would like to obtain documents and deposition testimony from Kirkpatrick.

CTCI's subpoena, which was served on October 10, 2019, sought compliance in Baton Rouge, Louisiana on October 29, 2019. (R. Doc. 50-1 at 1-2). In response to the subpoena, Kirkpatrick and KPMG informed CTCI that they objected to the subpoena as it was not issued in compliance with Louisiana Code of Evidence Article 517, which requires a contradictory hearing to be held prior to the service of a subpoena on a CPA. (R. Doc. 50 at 81; *see* R. Doc. 60).

CTCI filed the instant motion to compel compliance with the subpoena and, to the extent necessary, to comply with the requirements of Article 517. (R. Doc. 46). As a preliminary issue, CTCI argues that while this is a breach of contract action under Louisiana law, the Court should apply federal privilege law, which does not recognize an accountant-client privilege, much less the procedural requirements of Article 517. (R. Doc. 46-1 at 8-10; R. Doc. 63 at 3-6). CTCI

further argues that even if the accountant-client privilege under Louisiana Code of Evidence article 515 applies, CTCI is entitled to obtain the information sought as the "client" in that accountant-client relationship. (R. Doc. 46-1 at 11-13). Finally, CTCI argues that the Court should find any additional procedural requirements under Article 517 to be satisfied. (R. Doc. 46-1 at 13-14).

In partially opposing the motion, Capital House Manager and WMF argue that while they have an interest to obtain documents and deposition testimony from Kirkpatrick, certain attorney-client communications after November 19, 2015 and information pertaining to WMF entities (other than Capital House Operator) fall outside the scope of discovery. (R. Doc. 51). As discussed further below, the foregoing issues became moot at oral argument when defense counsel withdrew the position with respect to attorney-client privilege and Plaintiff's counsel clarified that the scope of information sought pertained only to Capital House Operator. Capital House Manager and WMF also seek testimony on specific categories of information identified on an attachment to their opposition (R. Doc. 51-1). Again, at oral argument, the parties agreed that the additional information sought by Capital House Manager and WMF, including documents related to the negotiation and execution by CTCI of a Form 870-PT for the years 2012 and 2013, pertain solely to Capital House Operator.

Kirkpatrick and KPMG oppose the motion on the basis that as a federal court sitting in diversity, this Court must apply Louisiana privilege law, including the requirements of Article 517. (R. Doc. 60 at 1-6). Kirkpatrick and KPMG argue that the Court must hold a contradictory hearing in compliance with Article 517 to determine whether and to what extent the information sought is protected from disclosure by any applicable accountant-client privilege or work product rule, and that the subpoena meets the four criteria set forth in Article 517. (R. Doc. 60 at 6-12).

Kirkpatrick and KPMG further argue that the court must determine the extent of privilege and whether the subpoena is validly issued and enforceable so that they can comply with the rules of professional conduct for CPAs and a criminal provision in the Internal Revenue Code. (R. Doc. 60 at 12-14). At oral argument, Kirkpatrick and KPMG's counsel clarified that the non-parties were not taking any position with respect to whether an actual privilege applies to the information sought.

**III.    Law and Analysis**

    **A.    The scope of the information sought**

Rule 45 provides that "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i).

Through the subpoena at issue, CTCI seeks documents and testimony on three categories: (1) "Any and all documents concerning the 2012 Tax Returns for Operator"; (2) "Any and all documents concerning or related to the Form 1065X – Amended Return or Administrative Adjustment Request . . . referred to as the 2012 Amended Return for Operator"; and (3) "Any and all documents evidencing any and all communications or Professional Actions by [Kirkpatrick] for Operator, which were generated after the filing of the 2012 Tax Returns for Operator until the Form 1065X . . . was filed." (R. Doc. 50-1 at 8). At oral argument, Plaintiff's counsel clarified that the information sought pursuant to CTCI's subpoena is limited to documents and communications concerning Capital House Operator, and that CTCI does not seek any information related to the numerous related and support entities involved in the underlying deal or any unrelated WMF entities. Given these representations, any issue with respect to whether CTCI is seeking information pertaining to entities other than Capital House

Operator (and to which a separate accountant-client privilege with Kirkpatrick and KPMG may attach) is resolved. The Court finds that the scope of the information sought by CTCI through its subpoena, to the extent it is limited to Capital House Operator, to be relevant to the claims and defenses in this action and proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(2)(C).

Capital House Manager and WMF also seek to obtain information pertaining to other categories not explicitly detailed in CTCI's subpoena: (a) "any and all documents related to IRS NOPA (Notice of Proposed Adjustment) for the calendar years 2006, 2008, 2009, and 2010"; (b) "any and all documents related to IRS NOPA for calendar years 2007, 2011, 2012, and 2013"; (c) "any and all documents related to IRS requests to extend the statute of limitations for any of the years 2006 through 2013 in connection with negotiations of the NOPAs and [Kirkpatrick's] communication of those requests to CTCI, its counsel or other representatives and to Manager; (d) "any and all documents related to the amendments to the Purchase Agreement between CTCI and Manager"; (e) "any and all documents related to CTCI's settlement with the IRS for years 2006 through 2011, including, but not limited to, Notices of Final Partnership Administration Adjustment ('FPAA') for years ending December 31, 2006, 2007, 2008, 2009, 2010 and 2011" and (f) "any and all documents related to negotiation and execution by CTCI of a Form 870-PT for years 2012 and 2013." (R. Doc. 51-1). At oral argument, defense counsel focused on obtaining information related to the Form 870-PT.

It appears that many of the foregoing additional documents sought by Capital House Manager and WMF fall within one of the three categories of information sought in CTCI's subpoena. To the extent they do not, the Court finds this information is also relevant to the claims and defenses in this action and proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(2)(C). The Court will not require Capital House Manager and WMF to issue and serve a

subpoena to obtain this information from Kirkpatrick and KPMG. The information sought, however, is limited to documents pertaining solely to Capital House Operator. Furthermore, to the extent required, the Court finds good cause under Rule 16(b)(4) to extend the non-expert discovery deadline for the sole purpose of allowing Kirkpatrick and KPMG to obtain this information.

Having determined that the foregoing information sought otherwise falls within the scope of discovery, the Court will address whether any privileges are applicable.

### B. Whether federal or state privilege law applies

As a preliminary issue to the determination of whether any privilege applies, there appears to be some dispute regarding whether Louisiana law governing the accountant-client privilege applies to this action. Rule 501 of the Federal Rules of Evidence provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. The advisory committee notes provides that "[t]here may be diversity cases, however, where a claim or defense is based upon federal law. In such instances, federal privilege law will apply to evidence relevant to the federal claim or defense." Fed. R. Evid. 501 Advisory Committee Notes to the 1974 Enactment.

There is no dispute that this is a diversity action and CTCI's claims are for breach of contract under Louisiana law. CTCI argues, however, that federal privilege law applies in this action because Capital House Manager has raised certain defenses under federal law. (R. Doc. 46-1 at 8-10; R. Doc. 63 at 3-4).[4] There is no applicable accountant-client privilege under the federal common law. *See Couch v. United States*, 409 U.S. 322 (1973) ("[N]o confidential accountant-client privilege exists under federal law, and no statecreated privilege has been

---

[4] In one brief, however, CTCI argues that "[t]he existence of any privilege would be decided by state law." (R. Doc. 57 at 4).

recognized in federal cases. . . .") (citations omitted); *United States v. El Paso Co.*, 682 F.2d 530, 540 (5th Cir. 1982) ("Our Circuit does not recognize an accountant-client privilege."). In contrast, Louisiana law has codified an accountant-client privilege. *See* La. Code Evid. art. 515 *et seq*.

CTCI has not shown that the information sought through its subpoena pertains more to Capital House Manager's defenses than to its own claims, or that Capital House Manager's federal defenses are so pervasive that the Court should ignore the fact that CTCI has brought a breach of contract action under state law. It therefore appears that Louisiana should govern privilege issues. That said, the Court need not decide whether federal or state law privilege applies to this action. That is because even if state law applies, the privileges asserted are inapplicable given the facts of this case.

### C. Application of the accountant-client privilege

Louisiana law establishes a privilege between an account and his or her client relative to confidential communications:

> *A client has a privilege* to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional accounting services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication. This privilege includes the protection of other confidential information or material obtained by the accountant from the client for the purpose of rendering professional services. This privilege exists when the communication is:
> 
> (1) Between the client or a representative of the client and the client's accountant or a representative of the accountant.
> 
> (2) Between the accountant and a representative of the accountant.
> 
> (3) By the client or his accountant or a representative of either, to an accountant or lawyer, or representative of an accountant or lawyer, who represents another party concerning a matter of common interest.

9

(4) Between representatives of the client or between the client and a representative of the client.

(5) Among accountants and their representatives representing the same client.

(6) Between representatives of the client's accountant.

La. Code. Evid. art. 515(B) (emphasis added). A "client" is defined as "a person, including a public officer, corporation, partnership, unincorporated association, or other organization or entity, public or private, to whom professional services are rendered by an accountant, or who consults an accountant with a view to obtaining professional services from the accountant." La. Code. Evid. art. 515(A)(1).

In addition, the Louisiana Accountancy Act provides, in pertinent part, the following:

A. No licensee or person employed by a licensee shall be required to or shall voluntarily disclose or divulge the contents of any communication made to him by any person employing such licensee or person in connection with the rendition of tax services or to examine, audit, or report on any books, records, or accounts, or divulge any information derived from such books, records, or accounts in rendering professional services, *except as provided by Code of Evidence Articles 515 through 517*.

B. Notwithstanding the provisions of Subsection A of this Section, no licensee or person employed by a licensee shall be required by subpoena or otherwise to disclose or divulge any of the following internal documents maintained by such licensee:

(1) Personnel files, *except that an individual may subpoena his own personnel files*.

(2) Planning and procedure manuals.

(3) Notes and comments made in the course of evaluating the efforts of any licensee or employee, partner, shareholder, or member of a licensee in the performance of an engagement.

La. R.S. 37:86(A)-(B) (emphasis added).

There is no dispute that Capital House Operator, as well as its members, CTCI and Capital House Manager, are "clients" of Kirkpatrick and KPMG. At oral argument, counsel for Kirkpatrick and KPMG represented that they were concerned with producing the information sought by the subpoena because of the apparent breadth of the information sought, which appeared to concern entities other than Capital House Operator. Given Plaintiff's counsel's clarifications at oral argument, as well as the Court's limitation of any discoverable information to that pertaining to Capital House Operator, those concerns are unwarranted. Again, the only information that must be produced, through both documents and testimony, is information pertaining to Capital House Operator. Given that both of Capital House Operator's members are seeking information regarding Capital House Operator from its accountant, the Court finds that the information sought is not subject to the accountant-client privilege, or is otherwise waived by the client, under Article 515. Similarly, the Court finds that Capital House Operator's own accounting files are subject to subpoena by its members under Louisiana Revised Statute 37:86(B)(1). In short, the Court finds that even if Louisiana privilege law applies under Rule 501, that does not preclude Capital House Operator from obtaining its own information from its own accountant.

The sole remaining issue with respect to the accountant-client privilege is Kirkpatrick and KPMG's argument that certain requirements under Article 517, including a contradictory hearing, must be satisfied prior to the issuance of a subpoena or court order with respect to information sought from an accountant in civil litigation. Article 517 provides the following:

> A. General rule. Neither a subpoena nor a court order shall be issued to an accountant or his representative to appear or testify in any civil or juvenile proceeding, including pretrial discovery, or in an administrative investigation or hearing, except proceedings by the State Board of Accountancy as provided in the Louisiana Accountancy Act, where the purpose of the subpoena or order is to ask the accountant or his representative to reveal information about a client or former

> client obtained in the course of representing the client unless the court determines, after a contradictory hearing held *after service of actual notice to the accountant and the client at least ten days prior to the contradictory hearing*, that the information sought is not protected from disclosure by any applicable privilege or work product rule and all of the following apply:
>
> (1) The information sought is essential to the successful completion of an ongoing investigation, is essential to the case of the party seeking the information, and is not merely peripheral, cumulative, or speculative.
>
> (2) The purpose of seeking the information is not to harass the accountant *or his client*.
>
> (3) With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.
>
> (4) There is no practicable alternative means of obtaining the information.
>
> B. Waiver. Failure to object timely to noncompliance with the terms of this Article constitutes a waiver of the procedural protections of this Article, but does not constitute a waiver of any privilege.
>
> C. Binding effect of determination; *notice to client*. The determination that an accountant-client privilege is not applicable to the testimony *shall not bind the client or former client unless the client or former client was given notice* within the time period set forth in Subsection A of this Section, of the time, place, and substance of the hearing and had an opportunity fully to participate in that hearing.
>
> D. Scope. Nothing in this Article is intended to affect the absolute privileges against disclosure in R.S. 37:86(B) through (E).

La Code. Evid. art. 517 (emphasis added). The highlighted portions of Article 517 make it clear that the rule does not anticipate the situation where a client seeks its own information from its own accountant, which would lead to the absurd requirement that the client provide itself notice of a contradictory hearing.

It appears that Kirkpatrick and KPMG solely argue that Article 517 applies in light of the potential that the information sought pertains to entities other than Capital House Operator or to the extent CTCI and Capital House Manager dispute the extent of the scope of the privilege.

Those issues were resolved at oral argument. As stated above, the only information that may be obtained pursuant to this ruling is information pertaining to Capital House Operator. Because both CTCI and Capital House Manager are seeking information related solely to Capital House Operator, and the accountant-client privilege under Article 515 is inapplicable, the additional requirements of Article 517 appear to also be inapplicable.[5]

While Article 517 appears to be inapplicable, the Court nevertheless provided the parties the opportunity to raise any arguments with respect to the requirements of that provision at oral argument. The Court has also considered the four enumerated factors and find that they have been met. The sole factor that Kirkpatrick and KPMG argue may not be met is the final one, which requires a finding that there is no practical alternative means of obtaining the information sought. (R. Doc. 60 at 9). In short, Kirkpatrick and KPMG argue that CTCI would have access to any final work product that has been provided to it. While that may be the case, the information sought and otherwise allowed by this order includes non-final work product and communications that would not be obtainable from any source other than Kirkpatrick and KPMG.

### D. Application of the attorney-client privilege

In their limited opposition, Capital House Manager and WMF assert the attorney-client privilege with respect to certain communications between their counsel and KPMG after November 19, 2015. (R. Doc. 51). At oral argument, defense counsel withdrew this assertion of

---

[5] Furthermore, even if substantive state privilege law applies in this action under Rule 501, the Court is not convinced that the requirements of Article 517, which appear procedural in nature, apply to a subpoena served under Rule 45 of the Federal Rules of Civil Procedure. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938)). Kirkpatrick and KPMG have not presented a single federal decision holding that Article 517 constitutes substantive state law applicable in a diversity action. The Court has found only one federal court decision discussing the possible application of Article 517 in a federal proceeding, but the parties "waived an evidentiary hearing." *See Hillman Lumber Prod., Inc. v. Webster Mfg., Inc.*, No. 06-1204, 2008 WL 2811835, at *1 (W.D. La. July 8, 2008).

the attorney-client privilege in light of the nature of the few communications discovered. Accordingly, this issue is moot.

      **E.**      **Costs and timeframe of third-party discovery**

At oral argument, the Court stayed the deadline to file dispositive motions and Daubert motions in light of the instant discovery dispute, and encouraged the parties to begin efforts to obtain responsive information and to schedule Kirkpatrick's deposition. The Court set a telephone conference with the parties for March 17, 2020, and required the parties to submit a status report with respect to the discovery at issue the day before the conference. (R. Doc. 77). The Court will reset the deadline to file dispositive motions and Daubert motions at or soon after the scheduled telephone conference.

It remains unclear to the Court the extent of information subject to this ruling. At this time, the Court finds it appropriate for the parties to bear their own costs with respect to the instant motion and the discovery efforts subject to this ruling. The parties are ordered to consult and confer with KPMG regarding the cost of production. If unable to reach a resolution amongst themselves, they may address the issue of costs in the status report.

**IV.**    **Conclusion**

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion to Compel or Authorize Deposition and Production of Documents (R. Doc. 46) is **GRANTED**. Kirkpatrick and KPMG must produce the information subject to this ruling, including Kirkpatrick's deposition testimony, by **March 23, 2020** unless otherwise agreed upon by the parties. The parties shall inform the Court of any agreed upon deadline for completion of this third-party discovery in their status report to be

submitted on **March 16, 2020**. The parties are to make good faith efforts to resolve any issues with respect to this Order prior to seeking court intervention.

**IT IS FURTHER ORDERED** that counsel for Kirkpatrick may object to any attempt to obtain testimony outside of the scope of information allowed by this Order and, in so objecting, may instruct Kirkpatrick not to answer such questioning. The parties must address any such dispute in a written motion filed within **3 days** of the objection.

**IT IS FURTHER ORDERED** that the parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on March 11, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**