# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHEVRON TCI, INC.** | **CIVIL ACTION** |
| **VERSUS** | |
| **CAPITOL HOUSE HOTEL MANAGER, LLC, ET AL.** | **NO. 18-00776-BAJ-RLB** |

### RULING AND ORDER

Before the Court is Plaintiff's **Motion In Limine To Exclude Extrinsic Evidence From Defendants Regarding The Parties' Agreements (Doc. 202)**. The Motion is opposed. (Doc. 206). For the reasons stated herein, Plaintiff's Motion is **GRANTED.**

**I.   FACTS**

This case centers on a contractual dispute arising from a failed real estate venture. Defendants Capitol House Hotel Manager, LLC ("Manager"), and The Wilbur Marvin Foundation ("WMF") (collectively, "Defendants") sought to restore an old, abandoned hotel in downtown Baton Rouge. (Doc. 110-1, ¶¶ 8–10; Doc. 135, ¶¶ 8–10).

To accomplish the rehabilitation and restoration of the Hotel, additional capital was needed over and above conventional bank financing and other funding sources. (Doc. 163-1, ¶ 2; Doc. 132-1, ¶ 2). The use of historic tax credits and associated capital contributions, generated as a result of obtaining such credits, was sought to bridge the gap between the total cost of the project and the sum that a

1

traditional lender would be willing to advance pursuant to a loan secured by a mortgage. (Doc. 163-1, ¶ 2; Doc. 132-1, ¶ 2). On November 4, 2004, Plaintiff expressed interest in investing in the "rehabilitation of the historic Capitol House Hotel in Baton Rouge, Louisiana." (Doc. 121-29).

### a. Entities Involved

Gary J. Elkins, Esq. ("Elkins"), an attorney "specializing in tax credits available through programs of the federal government," was hired to assist in securing financing. (Doc. 163-1, ¶ 3; Doc. 132-1, ¶ 3). In doing so, Elkins formed the following LLCs: (1) Defendant Manager; (2) Capitol House Hotel Operating Company, LLC ("Operator"); and (3) Capitol House Hotel Development Company, LLC ("Owner").[1] (Doc. 163-1, ¶¶ 1, 7; Doc. 132-1, ¶¶ 1, 7). Owner owned the real estate and bricks and mortar of the Hotel. (Doc. 163-1, ¶ 8; Doc. 132-1, ¶ 8). Operator leased the Hotel from Owner pursuant to a Master Lease Agreement, and owned the furniture, fixtures, and equipment. (Doc. 163-1, ¶¶ 8, 40; Doc. 132-1, ¶¶ 8, 40). Plaintiff and Manager, Defendant herein, became co-owners of Operator. (Doc. 110-1, ¶ 20; Doc. 135, ¶ 20).

### b. Contracts in Place

Operator filed its Articles of Organization and Initial Report with the Louisiana Secretary of State on December 13, 2005. (Doc. 110-1, ¶ 23; Doc. 135, ¶ 23). After more than one year of negotiations, the parties executed the relevant documents

---

[1] Manager is a subsidiary of Capitol House Hotel, L.L.C. (Doc. 110-1, ¶ 2; Doc. 135, ¶ 2; Doc. 94-1). Capitol House Hotel, L.L.C. is a subsidiary of WMF. (Doc. 110-1, ¶ 2; Doc. 135, ¶ 2; Doc. 94-1).

for the "Capitol House transaction" on December 29, 2005. (Doc. 132-1, ¶ 8; Doc. 144, ¶ 8).

On December 29, 2005, Plaintiff and Manager executed the Operating Agreement for Operator, pursuant to which Plaintiff, as the "Investor Member," became the owner of 99.9% of the membership interests in Operator, and Manager, as the "Managing Member," became the owner of .1% of the membership interests in Operator. (Doc. 163-1, ¶ 11; Doc. 132-1, ¶ 11).

Also on December 29, 2005, Plaintiff and Manager executed a "Purchase Agreement," containing "put" rights in favor of Plaintiff, and "call" rights in favor of Manager.[2] (Doc. 163-1, ¶ 10; Doc. 132-1, ¶ 10). On May 31, 2007 Plaintiff and Manager executed an Amended and Restated Purchase Agreement (the "May 31 Amended Purchase Agreement"). The May 31 Amended Purchase Agreement was subsequently amended multiple times. (Doc. 121-5). The Court has held that "the parties are bound by the clear and unambiguous terms of the contracts they voluntarily executed." (Doc. 198, p. 19).

Also relevant here, Plaintiff and WMF executed a Guaranty Agreement on December 29, 2005, whereby WMF, as guarantor, guaranteed various obligations set forth in the Purchase Agreement. (Doc. 163-1, ¶ 12; Doc. 132-1, ¶ 12; Doc. 121-3). Similarly, the Court held that "WMF is bound by the Guaranty it signed."

---

[2] Generally, a "put option" is an "option to sell something (esp. securities) at a fixed price even if the market declines; the right to require another to buy." *Option, Black's Law Dictionary* (11th ed. 2019). Generally, a "call option" is an "option to buy something (esp. securities) at a fixed price even if the market rises; the right to require another to sell. — Often shortened to call." *Option, Black's Law Dictionary* (11th ed. 2019).

3

(Doc. 198, p. 26–27).

### c. Sale of Hotel

During July and August 2012, Manager was "working on" selling the Hotel. (Doc. 163-1, ¶ 23; Doc. 132-1, ¶ 23). On September 5, 2012, the Hotel was sold to a third party. (Doc. 163-1, ¶ 38; Doc. 132-1, ¶ 38). To accomplish the sale, the Master Lease between Owner and Operator had to be terminated. (Doc. 163-1, ¶ 39; Doc. 132-1, ¶ 39). Plaintiff consented to the sale and to the termination of the Master Lease. (Doc. 163-1, ¶ 39; Doc. 132-1, ¶ 39). Substantially all of Operator's assets were thereafter sold to the third-party purchaser of the Hotel. (Doc. 163-1, ¶¶ 40–41; Doc. 132-1, ¶¶ 40–41).

### d. IRS Involvement

The parties structured the historic tax credit financing through a two-tiered transaction, wherein the tax credits available to Owner were passed from it to Operator and then allocated to Plaintiff pursuant to a historic tax credit Pass-Through Agreement. (Doc. 163-1, ¶ 13; Doc. 132-1, ¶ 13).

In 2012, the United States Court of Appeals for the Third Circuit issued a decision casting doubt on whether such structures qualified for historic tax credits. *See Historic Boardwalk Hall, LLC v. Comm'r*, 694 F.3d 425 (3d Cir. 2012), *cert. denied*, 133 S.Ct. 2734 (2013). In the same year, the IRS sent a Notice of Proposed Adjustment ("NOPA") to Manager's power of attorney, KPMG, regarding Operator's federal taxes for the years 2006 through 2011, challenging Operator's partnership structure for tax purposes. (Doc. 110-1, ¶¶ 62–63; Doc. 135, ¶¶ 62–63;

4

Doc. 121-25).

Elkins appeared at Manager's Federal Rule of Civil Procedure 30(b)(6) deposition and testified, on behalf of Manager, that the transaction at issue in this case was a pre-*Boardwalk* structure, and the "[IRS] was "attacking pre-[*Boardwalk*] transactions exactly like this" because the IRS "took the position that under this structure [. . .], a tax credit investor that had everything guaranteed and everything backstopped from the developer was not a partner in the partnership, did not have up side potential or down side risk, that everything was capped and protected and packaged." (Doc. 120-4, p. 8). Separately, in an Affidavit, Elkins stated: "The issue presented by the NOPAs was whether [Plaintiff] was a true partner with risk of loss as presented by the structure of the deal that closed on December 29, 2005 . . ." (Doc. 120-5, p. 5–6).

During July and August 2012, around the time that Manager was "working on selling the Hotel," Plaintiff's counsel, Holland & Knight, and KPMG were working on a response to the June 4, 2012 NOPA. (Doc. 163-1, ¶¶ 23; 31; Doc. 132-1, ¶¶ 23; 31). Manager hired Elkins to assist KPMG in the response to the June 4, 2012 NOPA on behalf of Operator. (Doc. 163-1, ¶ 32; Doc. 132-1, ¶ 32). The parties ultimately sent their response to the IRS on December 1, 2012. (Doc. 163-1, ¶ 31; Doc. 132-1, ¶ 31).

Ultimately, the parties' involvement with the Hotel effectively came to an end when the Hotel was sold in 2012, along with the furniture, fixtures, and equipment. (Doc. 163-1, ¶ 38, 40–41; Doc. 132-1, ¶ 38, 40–41). However, after this time, the parties continued to regularly renew their May 31 Amended Purchase Agreement.

5

(*See* Doc. 121-5).

## II. PROCEDURAL HISTORY

On August 17, 2018, Plaintiff initiated this action against Defendants Manager and WMF. (Doc. 1).

On May 1, 2020, the parties filed their cross-Motions for Summary Judgment. (Doc. 110; Doc. 163).

On March 29, 2021, the Court issued a Ruling and Order on the parties' Motions for Summary Judgment. (Doc. 198). The Court held that Defendants owe the Put to Plaintiff in the sum of $2,347,138.60, plus interest; WMF is a Guarantor of the Put; and Defendants owe Plaintiff a prorated Asset Management Fee in an amount to be determined at trial for the year 2012. (*Id.* at p. 26).

The following issues remain to be tried at the upcoming bench trial: (1) Priority Returns—specifically, which years Priority Returns were or are owed, which years Priority Returns were unpaid, whether the amount owed exceeded $366,293 during relevant years, and whether Louisiana Revised Statutes § 12:1327(A) bars Priority Returns owed to Plaintiff (*Id.* at p. 21); (2) Plaintiff's Applicable Tax Rate in the calculation of the Special Tax Distribution (*Id.* at p. 23); (3) attorney's fees, interest, and costs (*Id.* at p. 26); and (4) the amount of the prorated Asset Management Fee for the year 2012 (*Id.*).

## III. LEGAL STANDARD

The party objecting to the admissibility of evidence bears the burden of showing that the evidence is inadmissible. *Lyondell Chem. Co. v.*

6

*Occidental Chem. Corp.*, 608 F.3d 284, 295 (5th Cir. 2010).

Louisiana law bars parol evidence to evaluate contractual intent "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences." *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 563 (5th Cir. 2005) (citing La. Civ. Code art. 2046). Louisiana law does allow, however, for the admissibility of parol evidence when the written agreement is manifestly incomplete and is not intended to constitute the entire agreement between the parties. *Condrey*, 429 F.3d at 563 (citing *United Invs. Life Ins. Co. v. Alexander*, 662 So. 2d 831, 833 (La. App. 2d Cir. 1995); *Edwards v. State of La. Through the Dep't of Corr.*, 244 So. 2d 69, 72 (La. App. 1st Cir. 1971). Additionally, Louisiana Civil Code article 1848 provides:

> Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent valid oral agreement.

*Condrey*, 429 F.3d at 563 (citing La. Civ. Code art. 1848).

Thus, when the terms of a written agreement are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or to show the intention of the parties. *Martin Expl. Co. v. Amoco Prod. Co.*, 637 So. 2d 1202, 1205 (La. App. 1st Cir. 1994); *writ denied*, 644 So. 2d 1048 (La. 1994). Parol evidence may not be used, however, to vary, alter or add to the terms of a written contract. *Condrey*, 429 F.3d at 563 (citing

7

*Edwards*, 244 So. 2d at 72).

In the instant case, the Court previously held that "the parties are bound by the clear and unambiguous terms of the contracts they voluntarily executed." (Doc. 198, p. 19).

## IV. DISCUSSION

Plaintiff argues that the "Court should prohibit the admission of any extrinsic evidence attempting to contradict the terms of the parties' unambiguous agreements or to suggest that the agreements should be construed against Plaintiff." (Doc. 202-1).

Defendants respond that their pled affirmative defenses of estoppel require the examination of parol evidence. (Doc. 206, p. 3). Defendants concede that the Court held that the Seventh Amendment to the May 31 Amended Purchase Agreement is effective, but assert that Plaintiff can be estopped from collecting on an enforceable contract "based on the numerous grounds of estoppel that Defendants have asserted that have yet to be decided." (*Id.* at p. 4). Additionally, Defendants' Opposition references alleged oral agreements among the parties. (*See generally id.*).

For the reasons set forth herein, the Court finds that extrinsic evidence is not permissible to: (1) vary, alter, or add to the terms of the unambiguous contracts; (2) suggest that the contracts at issue should be construed against Plaintiff; (3) suggest unequal bargaining power among the parties; or (4) prove an alleged oral agreement made outside of the Operating Agreement, May 31 Purchase Agreement, or Amendments thereto.

### i. *Extrinsic Evidence is Not Permitted to Avoid the Terms of the Unambiguous Contracts*

First, the Court has already found that "the parties are bound by the clear and unambiguous terms of the contracts they voluntarily executed." (Doc. 198, p. 19). The May 31 Purchase Agreement provides that the Agreement will be construed in accordance with Louisiana law. (Doc. 121-4, p. 5). Louisiana courts have held that extrinsic evidence should not be permitted to avoid the terms of an unambiguous contract. *Campbell v. Melton*, 2001-2578 (La. 5/14/02), 817 So. 2d 69, 72 ("We find that the lower courts improperly admitted parol evidence to determine the parties' intent regarding an unambiguous clause in the [] contract.").

Applying Louisiana law, the United States Court of Appeals for the Fifth Circuit has held that "Parol evidence may not be used [] to vary, alter or add to the terms of a written contract." *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 563 (5th Cir. 2005) (internal citations omitted) ("[W]hen the terms of a written agreement are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or to show the intention of the parties."). Because the contracts at issue here are clear and unambiguous (*See* Doc. 198), the Court will not permit extrinsic evidence to vary, alter, or add to the terms of the written contracts.

9

### ii. *Extrinsic Evidence is Not Permitted to Suggest that the Contracts Should be Construed Against Plaintiff or to Prove Unequal Bargaining Power*

Second, Plaintiff argues that because the agreements are unambiguous, the principle of construing ambiguity against the drafter of the agreement is inapplicable. (Doc. 202-1, p. 5). Defendants respond that "the standard contracts should be interpreted against [Plaintiff] as the drafter" because "[Plaintiff] is attempting to confuse very clear language" and Plaintiff had a "uniquely strong bargaining position in all of its deals." (Doc. 206, p. 10).

Because the Court has found that the contracts are not ambiguous, there is no need to interpret the contracts against the drafter under Louisiana law. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 207 (5th Cir. 2007) ("If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured.") (citing La. Civ. Code. art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.")). Although Louisiana law provides that contracts should be construed against the drafter in a case of doubt or ambiguity, yet no doubt or ambiguity exists here, the Court will not permit extrinsic evidence to suggest that the contracts at issue should be construed against Plaintiff.

Additionally, the Court refers the Defendants to its Summary Judgment

10

Ruling:

> Finally, Defendants assert that Manager had an unequal bargaining position and continually relied on the fact that Plaintiff or its counsel drafted the documents at issue. (Doc. 144, ¶ 44; Doc. 141, p. 3). . . .
>
> Defendants do not argue that they did not consent to the agreement, but rather seek to avoid their obligations now that they appear to be dissatisfied with the outcome. *See* La. Civ. Code art. 1927. Here, the parties are bound by the clear and unambiguous terms of the contracts they voluntarily executed.

(Doc. 198, p. 19).

Because Defendants do not raise the issue of adhesion or lack of consent, extrinsic evidence regarding unequal bargaining power is irrelevant. *See Aguillard v. Auction Mgmt. Corp.*, 2004-2804 (La. 6/29/05), 908 So. 2d 1, 17–18 ("[W]e find nothing sufficient to establish the defendants were in such a superior bargaining position as to render the plaintiff a far weaker party or the contract adhesionary, nor do we find anything in the document itself that would call into question the validity of plaintiff's consent to the terms of the agreement as indicated by his signature."); *see also* Fed. R. Evid. 402. ("Irrelevant evidence is not admissible."); (Doc. 9; Doc. 166). Accordingly, the Court will not permit extrinsic evidence regarding alleged unequal bargaining power among the parties.

### iii. *Extrinsic Evidence is Not Permitted to Prove an Alleged Oral Agreement Made Prior to or Contemporaneous With a Written Contract*

Third, to the extent Defendants allege that a previous or contemporaneous oral agreement varies the terms of the parties' written agreement, Defendants' argument fails. (Doc. 206, p. 6–7). Louisiana courts have held that, "Because, as a matter of substantive contract law, a prior agreement cannot have the effect of modifying a

11

later agreement, parol evidence that an oral agreement prior to a written contract negated the written contract is not only not admissible but even if admitted is not competent, in substantive law, to modify the later-signed written contract." *Ortolano v. Snowizard Mfg., Inc.*, 476 So. 2d 359, 361 (La. Ct. App.), *writ denied sub nom. Ortolano v. Sno-Wizard Mfg., Inc.*, 479 So. 2d 922 (La. 1985).

Additionally, the Fifth Circuit has held that according to Louisiana law, attempts to prove the existence of a contemporaneous oral agreement do not fit within the parol evidence exception. *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 563 (5th Cir. 2005) (citing *First Nat'l Bank of Jefferson Parish v. Campo*, 537 So.2d 268, 270–71 (La. Ct. App. 1988) ("contemporaneous oral agreement or understanding between the parties that is not made part of the written contract does not qualify as such an exception [to the parol evidence rule].")).

Here, the parties entered into the Seventh Amendment to the May 31 Purchase Agreement on February 24, 2015. (Doc. 121-5, p. 25). The Court will not permit Defendants to introduce extrinsic evidence regarding an alleged oral agreement entered into prior to or contemporaneous with the Seventh Amendment.

### iv. *Integration or Merger Clause Negates the Legal Introduction of Extrinsic Evidence*

Finally, the Court will not permit extrinsic evidence regarding alleged oral agreements entered into after the Seventh Amendment because of the parties' integration or merger clause. Section 8(iv) of the May 31 Purchase Agreement provides, "This Agreement . . . may not be modified, amended or terminated, except by a written agreement between [Manager] and the [Plaintiff]." (Doc. 121-4, p. 5).

12

Although the parties subsequently amended the May 31 Purchase Agreement in written form, the Seventh Amendment provides, "The Purchase Agreement remains in effect except to the extent amended hereby." (Doc. 121-5, p. 25). The Seventh Amendment does not alter Section 8(iv) of the May 31 Purchase Agreement; thus, this provision remains in effect. (*See id.* at p. 25–28).

Additionally, Section 13.14 of the Operating Agreement provides: "This Agreement, together with the other documents referred to herein, sets forth the entire agreement between the parties regarding the subject matter hereof and no other representations or agreements shall be effective unless in writing, containing a specific reference to this Agreement and signed by the Members." (Doc. 121-6, p. 84).

These provisions constitute an integration or merger clause. An integration or merger clause is "[a] contractual provision stating that the contract represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject matter of the contract." *Caplan v. Ochsner Clinic, L.L.C.*, 799 F. Supp. 2d 648, 652 (E.D. La. 2011) (citing Black's Law Dictionary 880, 1079 (9th ed. 2009)).

In *Condrey v. SunTrust Bank of Georgia*, the Fifth Circuit held, "By its very definition, an integration or merger clause negates the legal introduction of parol evidence; it is a 'provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written document.'"[3] 429 F.3d 556, 564 (5th Cir. 2005) (citing Black's Law

---

[3] In *Condrey*, the Fifth Circuit examined the following contractual language and found the contract to be fully integrated: "This agreement sets forth the entire agreement and

13

Dictionary 683 (6th ed. 1983)). There, the Court concluded that "Louisiana law bars parol evidence in this case, where the contract is unambiguous and where a merger clause confirms the intent of the parties that the contract be a fully integrated document." *Id.* at 566. "[B]ecause Louisiana contract law explains that integration clauses must be given effect where the contract properly reflects the parties' intentions, parol evidence must be excluded from this court's review in this case." *Id.* at 564.

In *Omnitech Int'l, Inc. v. Clorox Co.*, the Fifth Circuit precluded the use of extrinsic evidence to prove alleged oral representations and subsequent oral modifications because the disputed contract at issue contained a merger clause that only allowed it to be modified in writing. The Court explained:

> The written agreements between the parties include an express integration clause, reflecting that the entire agreement between the parties had been reduced to writing in those instruments and that it can be modified only "by written agreement executed by authorized representatives of the parties hereto." While we by no means interpret the merger clause, *per se*, to preclude any parol evidence as to other possible agreements and/or representations between the parties, the facts of the instant case compel a conclusion that the merger clause correctly reflected the parties' intentions and should thus be enforced as written.

11 F.3d 1316, 1328 (5th Cir. 1994). The merger clause in the instant case similarly requires any modification to be made in writing. (Doc. 121-6, p. 84 ("no other representations or agreements shall be effective unless in writing, containing a specific reference to this Agreement and signed by the Members")).

---

understanding between the parties as to the subject matter of this agreement and acknowledges all prior discussions between them." *Condrey*, 429 F.3d at 564.

In *Omnitech*, the court did not admit parol evidence "because the merger clause had defined the agreed-upon means by which the parties' obligations could be modified," as is true in the instant case. *Water Craft Mgmt., L.L.C. v. Mercury Marine*, 361 F. Supp. 2d 518, 552 (M.D. La. 2004), *judgment entered*, No. CIV.A. 99-1031-B-M1, 2004 WL 3244168 (M.D. La. Oct. 1, 2004), *and aff'd sub nom. Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484 (5th Cir. 2006) (citing *Omnitech Int'l, Inc.*, 11 F.3d at 1328).

Analyzing *Omnitech,* the Court recognized:

Recently, the Fifth Circuit applied *Omnitech* in the context of a claim for detrimental reliance in *Drs. Bethea v. St. Paul Guardian Ins. Co.*, 376 F.3d 399 (5th Cir. 2004). This decision did not deal directly with parol evidence or a breach of contract claim; however, it did use an integration clause to preclude claims for detrimental reliance and unjust enrichment. *Drs. Bethea* illustrates the **importance that the Fifth Circuit places on only looking at a contract dispute in the context of the four corners of the document whenever the disputed document is an unambiguous, fully-integrated agreement.** (emphasis added).

*Id.* (citing *Talbert–Siebert Ent., Inc. v. Shell Oil Company*, 1992 WL 119916, \*2 (M.D. La. 1992), *aff'd*, 995 F.2d 224 (5th Cir. 1993) (refusing to allow parol evidence when "the integration clause [forbade] consideration of any oral agreement either before or after execution of [the written agreement].").

The facts of the instant case compel a conclusion that the merger clause correctly reflected the parties' intentions and should thus be enforced as written. (*See* Doc. 198, the Court's Summary Judgment Ruling enforcing the contract as written). Additionally, the merger clause defined the agreed-upon means by which the parties' obligations could be modified. (Doc. 121-6, p. 84 ("no other representations

15

or agreements shall be effective unless in writing, containing a specific reference to this Agreement and signed by the Members")). Accordingly, extrinsic evidence is not permissible in this case.

The Court's holding in *Water Craft Management, L.L.C.* does not persuade otherwise. 361 F. Supp. 2d at 552. There, the Court found that the presence of a merger clause in a contract does not *per se* preclude the use of parol evidence. *Id.* The Court relied on the "unique facts" of *Water Craft Management, L.L.C.* to find that parol evidence was permissible, noting that "the court must look at the facts of the individual case to determine if the merger clause 'compel[s] a conclusion that [it] correctly reflected the parties' intentions and should thus be enforced as written.'" *Id.* (citing *Omnitech Int'l, Inc.*, 11 F.3d at 1328). Here, the Court will enforce the clear and unambiguous language of the contracts as written, including the merger clause.

Accordingly, Plaintiff's Motion in Limine is granted.

### V.  CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion in Limine (Doc. 202) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants are not permitted to introduce extrinsic evidence to: (1) vary, alter, or add to the terms of the Operating Agreement, May 31 Purchase Agreement, or Amendments thereto; (2) suggest that the contracts at issue should be construed against Plaintiff; (3) suggest unequal bargaining power among the parties; or (4) prove any alleged oral agreements outside of the Operating

16

Agreement, May 31 Purchase Agreement, and Amendments thereto.

Baton Rouge, Louisiana, this 7th day of May, 2021

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**