UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHEVRON TCI, INC.                                          CIVIL ACTION

VERSUS

CAPITOL HOUSE HOTEL MANAGER,                               NO. 18-00776-BAJ-RLB
LLC, ET AL.

RULING AND ORDER

Before the Court is Defendants' **Motion In Limine To Exclude Certain CTCI Testimony And Exhibits (Doc. 200).** The Motion is opposed. (Doc. 207). For the reasons stated herein, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.  FACTS

The facts of this case have been well-chronicled in prior rulings of the Court. Nonetheless, the relevant facts are herein repeated. This case centers on a contractual dispute arising from a failed real estate venture. Defendants Capitol House Hotel Manager, LLC ("Manager"), and The Wilbur Marvin Foundation ("WMF") (collectively, "Defendants") sought to restore an old, abandoned hotel in downtown Baton Rouge. (Doc. 110-1, ¶¶ 8–10; Doc. 135, ¶¶ 8–10).

To accomplish the rehabilitation and restoration of the Hotel, additional capital was needed over and above conventional bank financing and other funding sources. (Doc. 163-1, ¶ 2; Doc. 132-1, ¶ 2). The use of historic tax credits and associated capital contributions, generated as a result of obtaining such credits, was

1

sought to bridge the gap between the total cost of the project and the sum that a traditional lender would be willing to advance pursuant to a loan secured by a mortgage. (Doc. 163-1, ¶ 2; Doc. 132-1, ¶ 2). On November 4, 2004, Plaintiff expressed interest in investing in the "rehabilitation of the historic Capitol House Hotel in Baton Rouge, Louisiana." (Doc. 121-29).

### a. Entities Involved

Gary J. Elkins, Esq. ("Elkins"), an attorney "specializing in tax credits available through programs of the federal government," was hired to assist in securing financing. (Doc. 163-1, ¶ 3; Doc. 132-1, ¶ 3). In doing so, Elkins formed the following LLCs: (1) Defendant Manager; (2) Capitol House Hotel Operating Company, LLC ("Operator"); and (3) Capitol House Hotel Development Company, LLC ("Owner").[1] (Doc. 163-1, ¶¶ 1, 7; Doc. 132-1, ¶¶ 1, 7). Owner owned the real estate and bricks and mortar of the Hotel. (Doc. 163-1, ¶ 8; Doc. 132-1, ¶ 8). Operator leased the Hotel from Owner pursuant to a Master Lease Agreement, and owned the furniture, fixtures, and equipment. (Doc. 163-1, ¶¶ 8, 40; Doc. 132-1, ¶¶ 8, 40). Plaintiff and Manager, Defendant herein, became co-owners of Operator. (Doc. 110-1, ¶ 20; Doc. 135, ¶ 20).

### b. Contracts in Place

Operator filed its Articles of Organization and Initial Report with the Louisiana Secretary of State on December 13, 2005. (Doc. 110-1, ¶ 23; Doc. 135, ¶ 23).

---

[1] Manager is a subsidiary of Capitol House Hotel, L.L.C. (Doc. 110-1, ¶ 2; Doc. 135, ¶ 2; Doc. 94-1). Capitol House Hotel, L.L.C. is a subsidiary of WMF. (Doc. 110-1, ¶ 2; Doc. 135, ¶ 2; Doc. 94-1).

After more than one year of negotiations, the parties executed the relevant documents for the "Capitol House transaction" on December 29, 2005. (Doc. 132-1, ¶ 8; Doc. 144, ¶ 8).

On December 29, 2005, Plaintiff and Manager executed the Operating Agreement for Operator, pursuant to which Plaintiff, as the "Investor Member," became the owner of 99.9% of the membership interests in Operator, and Manager, as the "Managing Member," became the owner of .1% of the membership interests in Operator. (Doc. 163-1, ¶ 11; Doc. 132-1, ¶ 11).

Also on December 29, 2005, Plaintiff and Manager executed a "Purchase Agreement," containing "put" rights in favor of Plaintiff, and "call" rights in favor of Manager.[2] (Doc. 163-1, ¶ 10; Doc. 132-1, ¶ 10). On May 31, 2007 Plaintiff and Manager executed an Amended and Restated Purchase Agreement (the "May 31 Amended Purchase Agreement"). The May 31 Amended Purchase Agreement was subsequently amended multiple times. (Doc. 121-5). The Court has held that "the parties are bound by the clear and unambiguous terms of the contracts they voluntarily executed." (Doc. 198, p. 19).

Also relevant here, Plaintiff and WMF executed a Guaranty Agreement on December 29, 2005, whereby WMF, as guarantor, guaranteed various obligations set forth in the Purchase Agreement. (Doc. 163-1, ¶ 12; Doc. 132-1, ¶ 12; Doc. 121-3).

---

[2] Generally, a "put option" is an "option to sell something (esp. securities) at a fixed price even if the market declines; the right to require another to buy." *Option, Black's Law Dictionary* (11th ed. 2019). Generally, a "call option" is an "option to buy something (esp. securities) at a fixed price even if the market rises; the right to require another to sell. — Often shortened to call." *Option, Black's Law Dictionary* (11th ed. 2019).

3

Similarly, the Court held that "WMF is bound by the Guaranty it signed." (Doc. 198, p. 26–27).

### c. Sale of Hotel

During July and August 2012, Manager was "working on" selling the Hotel. (Doc. 163-1, ¶ 23; Doc. 132-1, ¶ 23). On September 5, 2012, the Hotel was sold to a third party. (Doc. 163-1, ¶ 38; Doc. 132-1, ¶ 38). To accomplish the sale, the Master Lease between Owner and Operator had to be terminated. (Doc. 163-1, ¶ 39; Doc. 132-1, ¶ 39). Plaintiff consented to the sale and to the termination of the Master Lease. (Doc. 163-1, ¶ 39; Doc. 132-1, ¶ 39). Substantially all of Operator's assets were thereafter sold to the third-party purchaser of the Hotel. (Doc. 163-1, ¶¶ 40–41; Doc. 132-1, ¶¶ 40–41).

### d. IRS Involvement

The parties structured the historic tax credit financing through a two-tiered transaction, wherein the tax credits available to Owner were passed from it to Operator and then allocated to Plaintiff pursuant to a HTC Pass-Through Agreement. (Doc. 163-1, ¶ 13; Doc. 132-1, ¶ 13).

In 2012, the United States Court of Appeals for the Third Circuit issued a decision casting doubt on whether such structures qualified for historic tax credits. *See Historic Boardwalk Hall, LLC v. Comm'r*, 694 F.3d 425 (3d Cir. 2012), *cert. denied*, 133 S.Ct. 2734 (2013). In the same year, the IRS sent a Notice of Proposed Adjustment ("NOPA") to Manager's power of attorney, KPMG, regarding Operator's federal taxes for the years 2006 through 2011, challenging Operator's

4

partnership structure for tax purposes. (Doc. 110-1, ¶¶ 62–63; Doc. 135, ¶¶ 62–63; Doc. 121-25).

Elkins appeared at Manager's Federal Rule of Civil Procedure 30(b)(6) deposition and testified, on behalf of Manager, that the transaction at issue in this case was a pre-*Boardwalk* structure, and the "[IRS] was "attacking pre-[*Boardwalk*] transactions exactly like this" because the IRS "took the position that under this structure [. . .], a tax credit investor that had everything guaranteed and everything backstopped from the developer was not a partner in the partnership, did not have up side potential or down side risk, that everything was capped and protected and packaged." (Doc. 120-4, p. 8). Separately, in an Affidavit, Elkins stated: "The issue presented by the NOPAs was whether [Plaintiff] was a true partner with risk of loss as presented by the structure of the deal that closed on December 29, 2005 . . ." (Doc. 120-5, p. 5–6).

During July and August 2012, around the time that Manager was "working on selling the Hotel," Plaintiff's counsel, Holland & Knight, and KPMG were working on a response to the June 4, 2012 NOPA. (Doc. 163-1, ¶¶ 23; 31; Doc. 132-1, ¶¶ 23; 31). Manager hired Elkins to assist KPMG in the response to the June 4, 2012 NOPA on behalf of Operator. (Doc. 163-1, ¶ 32; Doc. 132-1, ¶ 32). The parties ultimately sent their response to the IRS on December 1, 2012. (Doc. 163-1, ¶ 31; Doc. 132-1, ¶ 31).

Ultimately, the parties' involvement with the Hotel effectively came to an end when the Hotel was sold in 2012, along with the furniture, fixtures, and equipment. (Doc. 163-1, ¶ 38, 40–41; Doc. 132-1, ¶ 38, 40–41). However, after this time, the

parties continued to regularly renew their May 31 Amended Purchase Agreement. (*See* Doc. 121-5).

## II. PROCEDURAL HISTORY

On August 17, 2018, Plaintiff initiated this action against Defendants Manager and WMF. (Doc. 1).

On May 1, 2020, the parties filed their cross-Motions for Summary Judgment. (Doc. 110; Doc. 163).

On March 29, 2021, the Court issued a Ruling and Order on the parties' Motions for Summary Judgment. (Doc. 198). The Court held that Defendants owe the Put to Plaintiff in the sum of $2,347,138.60, plus interest; WMF is a Guarantor of the Put; and Defendants owe Plaintiff a prorated Asset Management Fee in an amount to be determined at trial for the year 2012. (*Id.* at p. 26).

The following issues remain to be tried at the upcoming bench trial: (1) Priority Returns—specifically, which years Priority Returns were or are owed, which years Priority Returns were unpaid, whether the amount owed exceeded $366,293 during relevant years, and whether Louisiana Revised Statutes § 12:1327(A) bars Priority Returns owed to Plaintiff (*Id.* at p. 21); (2) Plaintiff's Applicable Tax Rate in the calculation of the Special Tax Distribution (*Id.* at p. 23); (3) attorney's fees, interest, and costs (*Id.* at p. 26); and (4) the amount of the prorated Asset Management Fee for the year 2012 (*Id.*).

### III. LEGAL STANDARD

The party objecting to the admissibility of evidence bears the burden of showing that the evidence is inadmissible. *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 295 (5th Cir. 2010).

### i. Personal Knowledge

A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. Evidence to prove personal knowledge may consist of the witness's own testimony. *Id.* Rule 602 of the Federal Rules of Evidence requires a submitting party to lay a proper foundation that witnesses have personal knowledge of the matter about which they will testify. *Adams v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Can., AFL-CIO, Loc. 198*, 469 F. Supp. 3d 615, 642 (M.D. La.), *on reconsideration in part*, 495 F. Supp. 3d 392 (M.D. La. 2020).

### ii. Hearsay

Under the Federal Rules of Evidence, hearsay is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1)–(2). Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court" provide otherwise. Fed. R. Evid. 802. After a party properly objects to the admission of evidence as hearsay, the proponent of the evidence bears the

burden to show that the statement is not offered as hearsay or falls within an exception to the hearsay rule. *Dempster v. Lamorak Ins. Co.*, No. CV 20-95, 2020 WL 5552681, at *3 (E.D. La. Sept. 16, 2020) (citations omitted).

### iii. Deposition Testimony

Federal Rule of Civil Procedure 32 provides:

(a) Using Depositions.

(1) In General. At a hearing or trial, all or part of a deposition may be used against a party on these conditions:

(A) the party was present or represented at the taking of the deposition or had reasonable notice of it;

(B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and

(C) the use is allowed by Rule 32(a)(2) through (8).

Fed. R. Civ. P. 32.

### iv. Privilege

Rule 501 of the Federal Rules of Evidence requires a federal court sitting in diversity to apply the appropriate state's law concerning the scope and application of the claimed attorney-client privilege. The Magistrate Judge found no dispute as to whether Louisiana law governs attorney-client privilege in this matter. (Doc. 129, p. 9).

The Louisiana Code of Evidence provides:

A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication . . . made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with

such a communication . . . .

La. Code Evid. art. 506(B). Under Louisiana law, both the client and his or her lawyer or the lawyer's representative may claim the privilege. La. Code Evid. art. 506(D). The party asserting the privilege has the burden of proving its applicability and that a waiver has not occurred. *Smith v. Kavanaugh, Pierson & Talley*, 513 So. 2d 1138, 1143 (La. 1987).

The attorney-client privilege "was intended as a shield, not a sword." *Conkling v. Turner*, 883 F. 2d 431, 434 (5th Cir. 1989). As such, when the privilege holder makes a confidential communication a material issue in litigation, "fairness demands treating the defense [or claim] as a waiver of the privilege." *Id.*; *see also Asset Funding Group, LLC v. Adams & Reese, LLP*, No. 07-2965, 2008 WL 4186884, at *4 (E.D. La. Sept. 9, 2008) ("Waiver includes conduct which would make it unfair for the client to insist on the privilege thereafter."); *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) (recognizing "a client's inability to, at once, employ the privilege as both a sword and a shield."). In other words, a waiver occurs when the holder pleads a claim or defense in such a way that it will inevitably have to "draw upon a privileged communication in order to prevail." *Conono Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 110 (W.D. La. 1998).

## IV. DISCUSSION

Defendants seek to exclude the testimony of Nadine Barroca and Harry Darrenberg based on a lack of personal knowledge. (Doc. 200, p. 1). Defendants also seek to exclude several of Plaintiff's trial exhibits based on lack of foundation,

9

hearsay, and privilege pursuant to the Federal Rules of Evidence. (*Id.*).

Plaintiff responds that Defendants' objections to foundation, personal knowledge, and hearsay are overbroad and speculative. (Doc. 207, p. 6–7). Plaintiff argues that a "court may properly deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded." (*Id.* at p. 7 (citing *Cooper v. Meritor, Inc.*, 2019 WL 1028530, at *1 (N.D. Miss. Mar. 4, 2019)) (internal quotations omitted)). The Court will address each of Defendants' arguments in turn.

### i. *Nadine Barroca*

First, Defendants argue that Nadine Barroca, Plaintiff's current president, should not be permitted to testify at trial regarding matters for which she has no personal knowledge. (Doc. 200-1, p. 6). Barroca was offered as Plaintiff's corporate representative for a Federal Rule of Civil Procedure 30(b)(6) deposition. (*Id.*).

The United States Court of Appeals for the Fifth Circuit addressed this issue in *Brazos River Auth. V. GE Ionics, Inc.*, and set forth the following:

> Although there is no rule requiring that the corporate designee testify "vicariously" at trial, as distinguished from at the rule 30(b)(6) deposition, if the corporation makes the witness available at trial he should not be able to refuse to testify to matters as to which he testified at the deposition on grounds that he had only corporate knowledge of the issues, not personal knowledge. . . . Thus, if a rule 30(b)(6) witness is made available at trial, he should be allowed to testify as to matters within corporate knowledge to which he testified in deposition.

469 F.3d 416, 434 (5th Cir. 2006). Accordingly, as Plaintiff's corporate representative, the Court will not exclude Barroca's testimony altogether. Defendants' Motion is denied in this respect.

In *Union Pump Co. v. Centrifugal Tech. Inc.*, however, the Fifth Circuit set

10

forth the following:

> Federal Rule of Civil Procedure 30(b)(6) allows corporate representatives to testify to matters within the corporation's knowledge during deposition, and Rule 32(a)(3) permits an adverse party to use that deposition testimony during trial. *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir.2006). However, a corporate representative may not testify to matters outside his own personal knowledge "to the extent that information [is] hearsay not falling within one of the authorized exceptions." *Id.* at 435; *see also Deutsche Shell Tanker Gesellschaft mbH v. Placid Refining Co.*, 993 F.2d 466, 473 n. 29 (5th Cir.1993) (corporate representative is not permitted to repeat "rank hearsay").

404 F. App'x 899, 907–08 (5th Cir. 2010).

Accordingly, the Court will not permit Barroca to testify as a corporate representative to matters outside her own personal knowledge to the extent that such testimony is hearsay not falling within one of the authorized hearsay exceptions. *See id.*; *see also Reuther v. Realtors*, No. CV 15-2850, 2016 WL 5337839, at *3 (E.D. La. Sept. 23, 2016) ("The motion is GRANTED to the extent it requests that the Court exclude any witness from testifying as a corporate representative to matters outside his or her own personal knowledge to the extent that such testimony is hearsay not falling within one of the authorized hearsay exceptions."). Defendants' Motion is granted in this respect.

### ii. *Harry Darrenberg*

Second, Defendants argue that Harry Darrenberg, a Holland & Knight attorney, cannot testify regarding conversations that he was neither present for nor involved in. (Doc. 200-1, p. 7). Defendants also contend that Darrenberg's testimony should be excluded for a lack of foundation. (*Id.* at p. 8).

Plaintiff responds that Defendants "assume mistakenly that Mr. Dannenberg will testify on certain conversations between Mr. Levine and Ms. Martin. He will not." (Doc. 207, p. 10).

Accordingly, the Court will not issue a blanket exclusion on Darrenberg's testimony at this time. Darrenberg will only be permitted to testify, however, regarding matters for which he has personal knowledge. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."). Should Darrenberg testify regarding matters outside of his personal knowledge, Defendants may object with specificity during trial. Defendants' Motion in Limine seeking complete exclusion of Darrenberg's testimony is denied.

### iii. *Pleadings, Discovery Requests, and Discovery Responses*

Third, Defendants seek to exclude all pleadings, discovery requests, and discovery responses as "hearsay documents." (Doc. 200-1, p. 11–12).

Plaintiff responds that Defendants' broad, sweeping hearsay objections requesting categorical pretrial exclusion is improper. (Doc. 207, p. 11). Plaintiff asserts that "Although [Plaintiff] at present does not intend to use pleadings or discovery responses as exhibits at trial, such evidence should not be excluded in the event it becomes necessary for [Plaintiff] to present them for a non-hearsay purpose." (*Id.*).

The Court will not categorically exclude all pleadings, discovery requests, and

discovery responses based on Defendants' general motion. *See Brossette v. Swift Transp. Co.*, No. CIV.A. 07-0888, 2008 WL 4809651, at *1 (W.D. La. Oct. 30, 2008) ("The Court will not categorically exclude Defendants' discovery responses on the basis of so 'general' a motion."). The Court notes Defendants' concern that Plaintiff will introduce its interrogatory response for the "truth of the matter asserted" that Plaintiff's Applicable Tax Rate is 38%. (Doc. 200-1, p. 12). The Court reminds Defendants that such evidence was available at the summary judgment stage, but the Court found a genuine issue of material fact as to Plaintiff's Applicable Tax Rate. (*See* Doc. 198). This is a bench trial, and as such, the Court will determine both the admissibility and substantive value of proposed evidence when it is raised during the course of trial.

Accordingly, Defendants' Motion in Limine seeking the exclusion of all pleadings, discovery requests, and discovery responses is denied. To the extent Plaintiff seeks to introduce pleadings, discovery requests, or discovery responses for the truth of the matter asserted during trial, Defendants may re-urge their objection with specificity.

### iv. *Deposition Testimony*

Fourth, Defendants argue that depositions are hearsay and can be used only for impeachment purposes or as testimony when the party offering the deposition testimony proves that the deponent is "unavailable as a witness" pursuant to Federal Rule of Evidence 804. (Doc. 200-1, p. 11–12).

Plaintiff responds that Federal Rule of Civil Procedure 32(a) governs the use

13

of deposition testimony at trial. (Doc. 207, p. 12). Plaintiff asserts that the deposition testimony of the parties' 30(b)(6) representatives should be permitted under Rule 32(a)(3). (*Id.* at p. 11). Additionally, Plaintiff asserts that several witnesses may be "unavailable," and accordingly, their depositions should be admissible at trial under Rule 32(a)(4). (*Id.* at p. 12).

The Court finds it impractical to determine the admissibility of each witness's testimony at this time without specificity as to: (1) which witness's deposition testimony is at issue; and (2) whether the testimony is permissible under Federal Rule of Civil Procedure 32 and the Federal Rules of Evidence. Accordingly, Defendants' broad request to exclude all deposition testimony is denied.

     **v.**   ***Attorney-Client Privilege and Work Product Protection***

Finally, Defendants seek to exclude Plaintiff's trial exhibits 85, 87, and 89, as subject to attorney-client and work product privilege. (Doc. 200-1, p. 13). Defendants contend that although the Magistrate Judge found the documents at issue to be discoverable, this decision does not impact their admissibility at trial. (*Id.* at p. 16).

Plaintiff responds that the Court has already ruled that attorney-client and work product protection do not apply to these documents. (Doc. 207, p. 13). Accordingly, Plaintiff asserts that the Court should reject Defendants' attempt to "take a second bite at the apple." (*Id.*). The Court agrees.

The Magistrate Judge previously considered this issue and found that the documents are not subject to attorney-client privilege or work product protection. (*See* Doc. 129). The Court will not re-litigate the same issues. Although Defendants

14

contend that the standard between admissibility and discoverability differs, Defendants fail to point to any case or law supporting their argument that the Court should reverse its previous ruling regarding attorney-client privilege and work product protection at this juncture.[3] (*See id.*). Accordingly, Defendants' Motion in Limine seeking exclusion of Plaintiff's trial exhibits 85, 87, and 89 is denied.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motion In Limine To Exclude Certain CTCI Testimony And Exhibits (Doc. 200)** is **GRANTED IN PART** and **DENIED IN PART**. Barroca is not permitted to testify as a corporate representative to matters outside her own personal knowledge to the extent that such testimony is hearsay not falling within one of the authorized hearsay exceptions. Defendants' Motion is denied in all other respects in accordance with this Ruling and Order.

---

[3] The Magistrate Judge concluded in a detailed Order, "Even if Defendants did not waive the attorney-client privilege at oral argument, however, they have nevertheless failed to meet their burden of establishing that the documents produced by KPMG are protected by the attorney-client privilege for the following reasons": (1) Defendants did not bear their burden of explaining why each of the specific communications at issue are subject to the attorney-client privilege (Doc. 129, p. 11); (2) Defendants have failed to convince the Court that Kirkpatrick acted specifically on behalf of Manager to the exclusion of Operator, and, by extension, Plaintiff (*Id.* at p. 12); (3) Defendants have not established that Kirkpatrick's assistance was necessary for Defendants to consult with their attorneys, which included counsel with expertise in tax law (*Id.* at p. 13); and (4) any attorney-client privilege has been waived on the basis that the communications involving Operator have been placed at issue by Defendants. (*Id.* at p. 13). Regarding work product protection, the Magistrate Judge found: "Similar to Defendants' assertions of the attorney-client privilege, the Court concludes that Defendants have not established the applicability of work product protection or otherwise waived any protections by disclosing the documents to Kirkpatrick and KPMG." (*Id.* at p. 16).

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Reply Memorandum (Doc. 211) is **DENIED**.

Baton Rouge, Louisiana, this 26th day of May, 2021

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**