UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CHEVRON TCI, INC. | CIVIL ACTION |
| VERSUS | |
| CAPITOL HOUSE HOTEL MANAGER, LLC, ET AL. | NO. 18-00776-BAJ-RLB |

## RULING AND ORDER

Before the Court is Plaintiff's **Partial Renewed Motion In Limine To Exclude Or Limit The Expert Report And Testimony Of Harold A. Asher (Doc. 203)** and Defendants' **Motion In Limine To Exclude The Testimony And Report Of Plaintiff's Expert, John W. Theriot (Doc. 201)**. Both motions are opposed. (Doc. 208; Doc. 209). For the reasons stated herein, Plaintiff's Motion (Doc. 203) is **GRANTED IN PART** and **DENIED IN PART.** Defendants' Motion (Doc. 201) is **DENIED**.

### I. FACTS

The facts of this case have been well-chronicled in prior rulings of the Court. Nonetheless, the relevant facts are herein repeated. This case centers on a contractual dispute arising from a failed real estate venture. Defendants Capitol House Hotel Manager, LLC ("Manager"), and The Wilbur Marvin Foundation ("WMF") (collectively, "Defendants") sought to restore an old, abandoned hotel in downtown Baton Rouge. (Doc. 110-1, ¶¶ 8–10; Doc. 135, ¶¶ 8–10).

To accomplish the rehabilitation and restoration of the Hotel, additional

capital was needed over and above conventional bank financing and other funding sources. (Doc. 163-1, ¶ 2; Doc. 132-1, ¶ 2). The use of historic tax credits and associated capital contributions, generated as a result of obtaining such credits, was sought to bridge the gap between the total cost of the project and the sum that a traditional lender would be willing to advance pursuant to a loan secured by a mortgage. (Doc. 163-1, ¶ 2; Doc. 132-1, ¶ 2). On November 4, 2004, Plaintiff expressed interest in investing in the "rehabilitation of the historic Capitol House Hotel in Baton Rouge, Louisiana." (Doc. 121-29).

### a. Entities Involved

Gary J. Elkins, Esq. ("Elkins"), an attorney "specializing in tax credits available through programs of the federal government," was hired to assist in securing financing. (Doc. 163-1, ¶ 3; Doc. 132-1, ¶ 3). In doing so, Elkins formed the following LLCs: (1) Defendant Manager; (2) Capitol House Hotel Operating Company, LLC ("Operator"); and (3) Capitol House Hotel Development Company, LLC ("Owner").[1] (Doc. 163-1, ¶¶ 1, 7; Doc. 132-1, ¶¶ 1, 7). Owner owned the real estate and bricks and mortar of the Hotel. (Doc. 163-1, ¶ 8; Doc. 132-1, ¶ 8). Operator leased the Hotel from Owner pursuant to a Master Lease Agreement, and owned the furniture, fixtures, and equipment. (Doc. 163-1, ¶¶ 8, 40; Doc. 132-1, ¶¶ 8, 40). Plaintiff and Manager, Defendant herein, became co-owners of Operator. (Doc. 110-1, ¶ 20; Doc. 135, ¶ 20).

---

[1] Manager is a subsidiary of Capitol House Hotel, L.L.C. (Doc. 110-1, ¶ 2; Doc. 135, ¶ 2; Doc. 94-1). Capitol House Hotel, L.L.C. is a subsidiary of WMF. (Doc. 110-1, ¶ 2; Doc. 135, ¶ 2; Doc. 94-1).

### b. Contracts in Place

Operator filed its Articles of Organization and Initial Report with the Louisiana Secretary of State on December 13, 2005. (Doc. 110-1, ¶ 23; Doc. 135, ¶ 23). After more than one year of negotiations, the parties executed the relevant documents for the "Capitol House transaction" on December 29, 2005. (Doc. 132-1, ¶ 8; Doc. 144, ¶ 8).

On December 29, 2005, Plaintiff and Manager executed the Operating Agreement for Operator, pursuant to which Plaintiff, as the "Investor Member," became the owner of 99.9% of the membership interests in Operator, and Manager, as the "Managing Member," became the owner of .1% of the membership interests in Operator. (Doc. 163-1, ¶ 11; Doc. 132-1, ¶ 11).

Also on December 29, 2005, Plaintiff and Manager executed a "Purchase Agreement," containing "put" rights in favor of Plaintiff, and "call" rights in favor of Manager.[2] (Doc. 163-1, ¶ 10; Doc. 132-1, ¶ 10). On May 31, 2007 Plaintiff and Manager executed an Amended and Restated Purchase Agreement (the "May 31 Amended Purchase Agreement"). The May 31 Amended Purchase Agreement was subsequently amended multiple times. (Doc. 121-5). The Court has held that "the parties are bound by the clear and unambiguous terms of the contracts they voluntarily executed." (Doc. 198, p. 19).

---

[2] Generally, a "put option" is an "option to sell something (esp. securities) at a fixed price even if the market declines; the right to require another to buy." *Option, Black's Law Dictionary* (11th ed. 2019). Generally, a "call option" is an "option to buy something (esp. securities) at a fixed price even if the market rises; the right to require another to sell. — Often shortened to call." *Option, Black's Law Dictionary* (11th ed. 2019).

3

Also relevant here, Plaintiff and WMF executed a Guaranty Agreement on December 29, 2005, whereby WMF, as guarantor, guaranteed various obligations set forth in the Purchase Agreement. (Doc. 163-1, ¶ 12; Doc. 132-1, ¶ 12; Doc. 121-3). Similarly, the Court held that "WMF is bound by the Guaranty it signed." (Doc. 198, p. 26–27).

### c. Sale of Hotel

During July and August 2012, Manager was "working on" selling the Hotel. (Doc. 163-1, ¶ 23; Doc. 132-1, ¶ 23). On September 5, 2012, the Hotel was sold to a third party. (Doc. 163-1, ¶ 38; Doc. 132-1, ¶ 38). To accomplish the sale, the Master Lease between Owner and Operator had to be terminated. (Doc. 163-1, ¶ 39; Doc. 132-1, ¶ 39). Plaintiff consented to the sale and to the termination of the Master Lease. (Doc. 163-1, ¶ 39; Doc. 132-1, ¶ 39). Substantially all of Operator's assets were thereafter sold to the third-party purchaser of the Hotel. (Doc. 163-1, ¶¶ 40–41; Doc. 132-1, ¶¶ 40–41).

### d. IRS Involvement

The parties structured the historic tax credit financing through a two-tiered transaction, wherein the tax credits available to Owner were passed from it to Operator and then allocated to Plaintiff pursuant to a historic tax credit Pass-Through Agreement. (Doc. 163-1, ¶ 13; Doc. 132-1, ¶ 13).

In 2012, the United States Court of Appeals for the Third Circuit issued a decision casting doubt on whether such structures qualified for historic tax credits. *See Historic Boardwalk Hall, LLC v. Comm'r*, 694 F.3d 425 (3d Cir. 2012),

*cert. denied*, 133 S.Ct. 2734 (2013). In the same year, the IRS sent a Notice of Proposed Adjustment ("NOPA") to Manager's power of attorney, KPMG, regarding Operator's federal taxes for the years 2006 through 2011, challenging Operator's partnership structure for tax purposes. (Doc. 110-1, ¶¶ 62–63; Doc. 135, ¶¶ 62–63; Doc. 121-25).

Elkins appeared at Manager's Federal Rule of Civil Procedure 30(b)(6) deposition and testified, on behalf of Manager, that the transaction at issue in this case was a pre-*Boardwalk* structure, and the "[IRS] was "attacking pre-[*Boardwalk*] transactions exactly like this" because the IRS "took the position that under this structure [. . .], a tax credit investor that had everything guaranteed and everything backstopped from the developer was not a partner in the partnership, did not have up side potential or down side risk, that everything was capped and protected and packaged." (Doc. 120-4, p. 8). Separately, in an Affidavit, Elkins stated: "The issue presented by the NOPAs was whether [Plaintiff] was a true partner with risk of loss as presented by the structure of the deal that closed on December 29, 2005 . . ." (Doc. 120-5, p. 5–6).

During July and August 2012, around the time that Manager was "working on selling the Hotel," Plaintiff's counsel, Holland & Knight, and KPMG were working on a response to the June 4, 2012 NOPA. (Doc. 163-1, ¶¶ 23; 31; Doc. 132-1, ¶¶ 23; 31). Manager hired Elkins to assist KPMG in the response to the June 4, 2012 NOPA on behalf of Operator. (Doc. 163-1, ¶ 32; Doc. 132-1, ¶ 32). The parties ultimately sent their response to the IRS on December 1, 2012. (Doc. 163-1, ¶ 31; Doc. 132-1, ¶ 31).

Ultimately, the parties' involvement with the Hotel effectively came to an end when the Hotel was sold in 2012, along with the furniture, fixtures, and equipment. (Doc. 163-1, ¶ 38, 40–41; Doc. 132-1, ¶ 38, 40–41). However, after this time, the parties continued to regularly renew their May 31 Amended Purchase Agreement. (*See* Doc. 121-5).

## II. PROCEDURAL HISTORY

On August 17, 2018, Plaintiff initiated this action against Defendants Manager and WMF. (Doc. 1).

On May 1, 2020, the parties filed their cross-Motions for Summary Judgment. (Doc. 110; Doc. 163).

On March 29, 2021, the Court issued a Ruling and Order on the parties' Motions for Summary Judgment. (Doc. 198). The Court held that Defendants owe the Put to Plaintiff in the sum of $2,347,138.60, plus interest; WMF is a Guarantor of the Put; and Defendants owe Plaintiff a prorated Asset Management Fee in an amount to be determined at trial for the year 2012. (*Id.* at p. 26).

The following issues remain to be tried at the upcoming bench trial: (1) Priority Returns—specifically, which years Priority Returns were or are owed, which years Priority Returns were unpaid, whether the amount owed exceeded $366,293 during relevant years, and whether Louisiana Revised Statutes § 12:1327(A) bars Priority Returns owed to Plaintiff (*Id.* at p. 21); (2) Plaintiff's Applicable Tax Rate in the calculation of the Special Tax Distribution (*Id.* at p. 23); (3) attorney's fees, interest, and costs (*Id.* at p. 26); and (4) the amount of the prorated Asset Management Fee for

the year 2012 (*Id.*).

The Court has excluded extrinsic evidence intended to: (1) vary, alter, or add to the terms of the Operating Agreement, May 31 Purchase Agreement, or Amendments thereto; (2) suggest that the contracts at issue should be construed against Plaintiff; (3) suggest unequal bargaining power among the parties; or (4) prove any alleged oral agreements outside of the Operating Agreement, May 31 Purchase Agreement, and Amendments thereto. (Doc. 213, p. 16–17). The Court has also ordered that "[Nadine] Barroca is not permitted to testify as a corporate representative to matters outside her own personal knowledge to the extent that such testimony is hearsay not falling within one of the authorized hearsay exceptions." (Doc. 219, p. 15).

### III. LEGAL STANDARD

The admissibility of expert testimony is governed by Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which require the Court to serve as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

Under Rule 702, the Court must consider three primary requirements in determining the admissibility of expert testimony: (1) qualifications of the expert witness; (2) relevance of the testimony; and (3) reliability of the principles and methodology upon which the testimony is based. *Fayard v. Tire Kingdom, Inc.*, No. 09-171-BAJ, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010). In *Daubert*, the

7

U.S. Supreme Court listed factors to consider when determining reliability of expert methodology, to include "whether a theory or technique can be (and has been) tested, whether it has been subjected to peer review and publication, the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, as well as general acceptance." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997) (internal alterations omitted) (quoting *Daubert*, 509 U.S. at 593–594).

This list is merely illustrative, however, and the Supreme Court has also emphasized that "the *Daubert* analysis is a 'flexible' one, and that 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (quoting *Kumho Tire*, 526 U.S. at 150). "The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 152).

Notably, *Daubert* motions are *not* appropriate when they attack "the underlying facts upon which [an expert's] opinion was based. That approach is not contemplated under a *Daubert* challenge." *In re Katrina Canal Breaches Consol. Litig.*, No. 10-866, 2012 WL 4328354, at *1 (E.D. La. Sept. 20, 2012). Rather, the reliability of data underlying an expert's opinion goes to the weight of the evidence,

and is subject to cross-examination, but should not serve as basis for its exclusion. *See Tyler v. Union Oil Co. of California*, 304 F.3d 379, 393 (5th Cir. 2002) ("Unocal instead attempts to show that the underlying data—provided by Unocal—was itself unreliable. This is an issue that Unocal could—and did—raise in cross-examination."); *In re Katrina Canal Breaches*, 2012 WL 4328354, at *1 ("Courts should not be lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility."). The validity or correctness of an expert's conclusions are issues for the jury to determine *after* the *Daubert* analysis. *See Pipitone*, 288 F.3d at 250 ("The fact-finder is entitled to hear Dr. Coco's testimony and decide whether it should accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which Dr. Coco relied are accurate.").

Ultimately, the Court has broad discretion in deciding whether to admit expert opinion testimony. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998). "Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Barnett v. Nat'l Cont'l Ins. Co.*, No. 3:17-CV-153-JWD-EWD, 2019 WL 126732, at *3 (M.D. La. Jan. 8, 2019) (quoting *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011)).

For purposes of the Daubert analysis here, it is also important to note that these cases will be tried to the Court, not a jury. "[S]ince Rule 702 is aimed at protecting jurors from evidence that is unreliable for reasons they may have difficulty understanding, in a bench trial there is greater discretion regarding procedure and

9

even the stringency of gatekeeping." 29 Victor J. Gold, Federal Practice & Procedure § 6270 (2d ed. 2020).

> In a bench trial, the principal reason for the Court's gatekeeping function is not implicated, namely to guard against jury confusion which may result from irrelevant and/or unreliable expert opinion testimony. The purpose of the Court's gatekeeping function required by Daubert is "to ensure that only reliable and relevant expert testimony is presented to the jury." "Most of the safeguards provided for in Daubert are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."

*Hunters Run Gun Club, LLC v. Baker*, No. 17-176, 2019 WL 2516876, at *1 (M.D. La. June 18, 2019) (Dick, J) (citations omitted*); see also Nassri v. Inland Dredging Co.*, No. 11-853, 2013 WL 256747, at *1 (M.D. La. Jan. 23, 2013).

Or, stated another way, "[t]here is less need for the gate keeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005); *see also Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in Daubert are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury.").

With these principles in mind, the Court turns to the parties' *Daubert* challenge.

### IV. DISCUSSION

Plaintiff seeks to exclude Defendants' expert, Harold A. Asher, and Defendants seek to exclude Plaintiff's expert, John W. Theriot, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (Doc. 201; Doc. 203). The Court will address each in turn.

10

### a. Plaintiff's Motion in Limine to Exclude Harold A. Asher

Defense expert Harold A. Asher is a Certified Public Accountant, "[c]ertified in Financial Forensics." (Doc. 209, p. 14). Defendants assert that Asher provides financial calculations that will assist the trier of fact in this case. (*See generally id.*).

Plaintiff seeks to exclude Asher on the following grounds: (1) Asher's opinions are unreliable because they ignore critical provisions in the parties' agreements and applicable Louisiana law and are contrary to the Court's summary judgment ruling; (2) Asher's opinions are improper legal conclusions; and (3) Defendants are seeking to use Asher as a conduit for their baseless accusations that Plaintiff intentionally deceived Defendants. (Doc. 203-1, p. 2). For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

#### i. *Asher's Report and Testimony Will Be Permitted*

Plaintiff contends that Asher's opinions and testimony are unreliable, unhelpful, and irrelevant because they are based on Asher's misinterpretation of the governing contracts, evaluation of selective and inaccurate evidence, and pure speculation. (Doc. 203-1, p. 11). Specifically, Plaintiff argues that Asher failed to reference key provisions in the relevant contracts. (*Id.* at p. 14). Plaintiff further contends that Asher's reliance on federal tax law is irrelevant to this dispute because dissolution of an entity is governed by state law, while the termination of a partnership for federal tax purposes is controlled by federal law. (*Id.* at p. 12).

Defendants respond that Plaintiff may challenge Asher's conclusions on cross-examination, but there is no basis to exclude his conclusions at trial.

(Doc. 209, p. 7). Defendants allege that Asher is a "Certified Public Accountant (CPA) with 45 years of experience, has been Accredited in Business Valuation (ABV) since 2007, Certified in Financial Forensics (CFF) since 1995, a Certified Valuation Analyst (CVA) since 1995, a Certified Fraud Examiner (CFE) since 1995, and a Forensic CPA (FCPA) since 2006," and has testified in 198 cases. (*Id.* at p. 12). Defendants argue that Asher's report conducts calculations based on the audited financials of Operator and arrives at factual conclusions regarding sums due, which would assist the Court. (*Id.* at p. 8–9).

Plaintiff takes issue with the data underlying Asher's opinion. *Daubert* motions are not appropriate, however, when they attack "the underlying facts upon which [an expert's] opinion was based. That approach is not contemplated under a Daubert challenge.*" In re Katrina Canal Breaches Consol. Litig.*, No. 10-866, 2012 WL 4328354, at *1 (E.D. La. Sept. 20, 2012). Rather, the reliability of data underlying an expert's opinion goes to the weight of the evidence, and is subject to cross-examination, but should not serve as basis for its exclusion. *See Tyler v. Union Oil Co. of California*, 304 F.3d 379, 393 (5th Cir. 2002) ("Unocal instead attempts to show that the underlying data—provided by Unocal—was itself unreliable. This is an issue that Unocal could—and did—raise in cross-examination."); *In re Katrina Canal Breaches*, 2012 WL 4328354, at *1 ("Courts should not be lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility.").

It bears reminding that "the trial court's role as gatekeeper [under *Daubert*] is

not intended to serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993)). Rather, as *Daubert* makes clear, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits. *Id.* Additionally, in the context of a bench trial, "the trial judge is in a unique position to hear the evidence and decide whether to disregard it altogether or to just consider the criticisms of the testimony as relevant to the weight the evidence is ultimately given." *Schmidt v. United States*, No. A-18-CV-00088-DAE, 2019 WL 2090695, at *6 (W.D. Tex. May 10, 2019).

Here, the Court notes Plaintiff's concerns, but finds that such concerns are more properly addressed on cross-examination. Accordingly, the Court will not exclude Asher's report and testimony altogether. Plaintiff's Motion is denied in part.

### ii. Limitations to Asher's Report and Testimony

The Court will, however, limit Asher's testimony as follows.

#### 1. Legal Conclusions

Plaintiff argues that Defendants are attempting to use an accountant to make legal arguments and usurp the Court's role in resolving legal issues. (Doc. 203-1, p. 2). Specifically, Plaintiff asserts:

> Asher's report is littered with inadmissible legal opinions and conclusions of law designed to prop up certain affirmative defenses

13

raised by Defendants. To illustrate, the opinions and conclusions rendered in Asher's report includes: (1) his subjective interpretation of the governing contracts, contractual language, and scope of the parties' obligations; (2) the contract provisions and federal tax law he believes are applicable to Defendants' affirmative defense of dissolution, liquidation and termination; (3) a legal analysis advocating Defendants' position on the issue of dissolution, liquidation and termination; and (4) a legal analysis and determination on the merits of CTCI's contract claims.

(*Id.* at p. 10).

Defendants respond that "Asher is not testifying about the law or offering legal opinions or conclusions of law." (Doc. 209, p. 5). Rather, Defendants contend that Asher provides useful information regarding the contractual relationship between the parties and applicable calculations of contract liability. (*Id.* at p. 5–6).

The Federal Rules of Evidence allow an expert to offer opinions that "embrace an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). An expert witness may not offer opinions, however, that amount to legal conclusions. *Feld Motor Sports, Inc. v. Traxxas, LP*, No. 4:14-CV-463, 2015 WL 4722144, at *3 (E.D. Tex. Aug. 7, 2015) (citing *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001); *Calderon v. Bank of America, N.A.*, 941 F. Supp. 2d 753, 759–60 (W.D. Tex. 2013) (noting that the law is not a proper subject of expert opinion testimony); *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 811 (N.D. Tex. 2013) ("Both opinions attribute legal significance to certain facts, which is not helpful to the trier of fact and must be excluded under Rule 702.")).

Accordingly, the Court will not permit Asher to testify regarding legal

conclusions and will not consider legal conclusions contained in Asher's expert report. The Court reminds the parties that as the trier of fact, the Court will make all legal conclusions required in this case.

### 2. *Conflicts with Summary Judgment Ruling*

Plaintiff argues that Asher offers conclusions that conflict with the Court's summary judgment Ruling. (Doc. 203-1, p. 15–17). As the parties are aware, the Court previously rendered a summary judgment Ruling, precluding the need for Asher to opine on certain issues.[3] (Doc. 198). The Court will not permit Asher to opine regarding issues already resolved by the Court. To the extent Asher's expert report renders conclusions contradicting the Court's previous Ruling, the Court will not consider such conclusions. The Court cautions the parties that it will not relitigate issues the Court has previously resolved during the upcoming bench trial.

### 3. *Opinion Regarding Intent of Parties*

Finally, Plaintiff asserts that Asher impermissibly opines on the intent of the parties. (Doc. 203-1, p. 17). Plaintiff contends that Asher's report repeatedly asserts improper commentary on Plaintiff's knowledge, intent, and state of mind. (*Id.*). Defendants respond that such phrases could be removed, and Asher's testimony would still assist the trier of fact. (Doc. 209, p. 16–17).

---

[3] The following issues remain to be tried at the upcoming bench trial: (1) Priority Returns—specifically, which years Priority Returns were or are owed, which years Priority Returns were unpaid, whether the amount owed exceeded $366,293 during relevant years, and whether Louisiana Revised Statutes § 12:1327(A) bars Priority Returns owed to Plaintiff (Doc. 198, 21); (2) Plaintiff's Applicable Tax Rate in the calculation of the Special Tax Distribution (*Id.* at p. 23); (3) attorney's fees, interest, and costs (*Id.* at p. 26); and (4) the amount of the prorated Asset Management Fee for the year 2012 (*Id.*).

The Court previously issued an evidentiary Ruling precluding extrinsic evidence in certain instances.[4] (Doc. 213). Additionally, the Court's summary judgment Ruling enforced the unambiguous contracts as written, rendering testimony regarding Plaintiff's intent irrelevant. (*See* Doc. 198); *see also* La. Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). Testimony barred or rendered moot by the Court's previous Rulings, including evidence regarding Plaintiff's knowledge, intent, or state of mind, is excluded.

Accordingly, Plaintiff's Motion is granted in part.

### b. Defendants' Motion in Limine

Plaintiff's rebuttal expert John W. Theriot is a "credentialed certified forensic accountant and certified in financial forensics." (Doc. 208, p. 4). Theriot has "practiced as a certified public accountant for more than 20 years, [and] is a member of numerous business organizations, including the American Institute of Certified Public Accountants." (*Id.*).

Defendant seeks to exclude Theriot's testimony and expert report for the following reasons: (1) Theriot has relied solely on legal assumptions and failed to

---

[4] The Court held: Defendants are not permitted to introduce extrinsic evidence to: (1) vary, alter, or add to the terms of the Operating Agreement, May 31 Purchase Agreement, or Amendments thereto; (2) suggest that the contracts at issue should be construed against Plaintiff; (3) suggest unequal bargaining power among the parties; or (4) prove any alleged oral agreements outside of the Operating Agreement, May 31 Purchase Agreement, and Amendments thereto. (Doc. 213, p. 16–17).

apply sound methodology; (2) Theriot failed to adhere to the "General Standard Rules" set forth by the American Institute of Certified Public Accountants, Inc.; (3) Theriot did not properly limit his opinions to rebuttal testimony. (Doc. 201-1).

### *i. Methodology*

Defendants argue that Theriot relied solely on assumptions provided by Plaintiff's counsel. (Doc. 201-1, p. 8). Defendants contend that the facts underlying Theriot's opinions are not "facts," but rather, are conclusory assumptions provided by Plaintiff's counsel, many of which contradict the plain reading of the contracts between the parties. (*Id.*). Additionally, Defendants assert that Theriot's failure to conduct an independent review of facts runs afoul of the accepted "General Standards Rule" set forth by the American Institute of Certified Public Accountants, Inc. (*Id.* at p. 13).

Plaintiff responds that Defendants challenge the weight of the evidence rather than admissibility. (Doc. 208, p. 7). Plaintiff asserts that these are issues to be presented to the trier of fact and are improper under the guise of a *Daubert* challenge. (*Id.*). The Court agrees. Similar to Asher's testimony, the reliability of data underlying Theriot's opinion goes to the weight of the evidence and may be challenged on cross-examination. *See Tyler v. Union Oil Co. of California*, 304 F.3d 379, 393 (5th Cir. 2002).

A review of Theriot's expert report shows that Theriot relied on assumptions provided by Counsel but performed independent analysis to make financial calculations based on the alleged contractual liability Counsel identified. (Doc. 119).

17

Notably, the Court has held that experts are not prohibited from relying on assumptions when reaching their opinions. *Nkansah v. Martinez*, No. 3:15-CV-00646, 2017 WL 2798520, at *4 (M.D. La. June 28, 2017) (internal citations omitted). Additionally, "[e]xperts are permitted to assume the fact of liability and opine about the extent of damages." *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 792 (N.D. Tex. 2013); *see also Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 23–25 (5th Cir. 1974) (affirming decision to admit testimony from certified public accountant who had prepared net profit analysis based on assumption of liability, and noting that party objecting to expert testimony had opportunity on cross-examination to challenge the bases for expert's opinion regarding lost sales).

The Court previously denied a *Daubert* challenge based on allegedly faulty assumptions, and held that "the credibility and amount of weight that should be applied to the opinions of the countervailing experts are better left to the consideration of the trier of fact." *Nkansah*, 2017 WL 2798520, at *4 (citing *Arceneaux v. Lexington Ins. Co.*, No. 11-423, 2013 WL 5839325, at *2 (M.D. La. Oct. 30, 2013)); *see also U.S. v. 14.3 Acres of Land More Or Less Situated in Lefore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions related to the bases and sources of an expert's opinions affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."); *St Joseph Abbey v. Castille*, No. 10-2717, 2011 WL 2182046, at *1 (E.D. La. June 3, 2011) ("The reliability of data underlying an expert's opinion goes to the weight of this evidence, but should not serve as a basis for its exclusion.")

(additional citations omitted). Indeed, the "most appropriate place to challenge the assumptions made by an expert is at trial on cross-examination and with countervailing expert testimony." *Nkansah*, 2017 WL 2798520, at *4. "Matters left for the [trier of fact's] consideration include the [expert's] alleged miscalculations, erroneous assumptions and inconsistencies . . ." *Id.* (internal citations omitted).

As the trier of fact, the Court will identify "erroneous assumptions" on which Theriot's calculations are based, if any, and disregard Theriot's resulting conclusion if necessary.

### ii. *Rebuttal Testimony*

Finally, Defendants argue that Theriot did not properly limit his opinions to rebuttal testimony and contend that Theriot's expert report was untimely. (Doc. 201-1, p. 16). Defendants' argument lacks merit. Although Theriot relies on assumptions independent of Asher's report, as Defendants assert, Theriot opines regarding the same contractual provisions that are the subject of Asher's report—the Priority Return, Asset Management Fee, and Special Tax Distribution. (*See* Doc. 114-1; Doc. 119). Further, Defendants themselves contend that Theriot began work on this case on November 19, 2019, nearly two years ago. (Doc. 201-1, p. 16). Defendants are not prejudiced by any alleged untimeliness of Theriot's expert report and have had a full opportunity to depose Theriot. If Defendants deemed it necessary, they could have requested leave to identify a sur-rebuttal expert in the two years that have passed since Plaintiff identified Theriot.

Accordingly, Defendants' Motion in Limine is denied.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Partial Renewed Motion In Limine To Exclude Or Limit The Expert Report And Testimony Of Harold A. Asher (Doc. 203)** is **GRANTED IN PART** and **DENIED IN PART** in accordance with this Ruling and Order. Harold A. Asher will not be permitted to testify regarding the following: (1) legal conclusions; and (2) issues barred or rendered moot by the Court's previous summary judgment Ruling (Doc. 198) and evidentiary Ruling (Doc. 213), including Plaintiff's knowledge, intent, or state of mind. (Doc. 213).

**IT IS FURTHER ORDERED** that Defendants' **Motion In Limine To Exclude The Testimony And Report Of Plaintiff's Expert, John W. Theriot (Doc. 201)** is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' **Motion For Leave To File Reply Memorandum In Support Of Defendants' Motion *In Limine* To Exclude The Testimony And Report Of Plaintiff's Expert, John W. Theriot (Doc. 210)** is **DENIED.**

Baton Rouge, Louisiana, this 25th day of June, 2021

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**